**In Re FLANIGAN'S ENTERPRISES, INC., Debtor.**

**Bankruptcy No. 85–02594–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

May 17, 1991.

Richard A. Brasch, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, Fla., for Metropolitan Life Ins. Co.

H. Clay Roberts, Proenza, White, Huck & Roberts, P.A., Miami, Fla., for debtor.

## MEMORANDUM DECISION

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER came before the Court on March 7, 1991 and April 29, 1991, for an evidentiary hearing on the claimant, Metropolitan Life Insurance Company's (herein-

after referred to as "Metropolitan"), application for leave to file a late proof of claim, pursuant to B.R. 3003(c) and 9006(b)(1).

## BACKGROUND

On or about November 1, 1982, the debtor entered into a group health insurance contract with Metropolitan. As part of said contract, the debtor and Metropolitan agreed to special financial arrangements, namely, a Special Premium Account Agreement; an Excess Risk Agreement and a Retrospective Premium Agreement; all of which were effective November 1, 1982.

The debtor cancelled its group insurance contract with Metropolitan (and, therefore, all of the special financial arrangments in connection therewith) effective December 31, 1983. On January 19, 1984, Metropolitan sent a letter to the debtor advising that Metropolitan would be advising the debtor "shortly" of any money owed to Metropolitan under the agreements. The debtor heard nothing further from Metropolitan until March, 1987.

On November 4, 1985, the debtor filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. The schedules of assets and liabilities filed by the debtor did not include Metropolitan as a creditor and as a result, Metropolitan did not receive any written notices in these proceedings. On October 3, 1986, Metropolitan forwarded its terminal financial accounting statement to the debtor, the receipt of which was not acknowledged by the debtor, and which the debtor claims not to have received. A follow-up letter, dated March 12, 1987, was then forwarded by Metropolitan to the debtor, receipt of which was acknowledged. By telephone conversation on or about March 25, 1987, Metropolitan was advised of these bankruptcy proceedings, including the fact that the debtor's confirmation hearing was scheduled for April 13, 1987. Notwithstanding this notice, Metropolitan did not file its application for leave to file a claim until June 2, 1987. During this interim, debtor received its order of confirmation on May 5, 1987.

On June 15, 1987, this Court conducted a hearing on Metropolitan's application for leave to file a late proof of claim. Based on argument of counsel during that hearing and on representations contained in legal memoranda subsequently filed by the parties, this Court held that Metropolitan was an unknown creditor at the time of the debtor's filing of schedules of assets and liabilities and denied Metropolitan's application. 77 B.R. 963. This holding was affirmed by the District Court. However, the Circuit Court of Appeals has remanded this case for an evidentiary hearing "on the issue of whether Metropolitan was an unknown creditor." In its decision, the Circuit Court affirms this Court's view of the applicable law but asserts Metropolitan's right to an evidentiary hearing to support or refute this Court's factual findings. In its order of remand, the Circuit Court also establishes the burden of proof to be applied by this Court in making its determination by specifically providing that the burden of proof rests on Metropolitan on this issue.

## EVIDENTIARY HEARING

This Court conducted its evidentiary hearing on March 7, 1991 and April 29, 1991. The hearing confirmed that on or about November 1, 1982 the Debtor entered into a group health insurance arrangement (the "Plan") with Metropolitan. As part of that contract, the debtor and Metropolitan entered into agreements by which the Plan would be self-funded by Flanigan's to a certain limit and under which Metropolitan would administer claims under the Plan and insure claims above Flanigan's limit of exposure. The arrangement for funding the Plan, and for providing premiums to Metropolitan for administration of the Plan and excess insurance, are reflected by three separate agreements. The first is an Excess Risk Agreement, the second is a Special Premium Account Agreement and the third is a Retrospective Premium Agreement. This Plan and these agreements ran until December 1, 1983. However, when the Plan came up for renewal, Metropolitan did not promptly provide a quotation for renewal of the

Plan. Consequently, the parties agreed to extend the Plan on a month to month basis until a renewal quote was provided and Flanigan's could decide upon renewal. However, when that renewal quotation was finally provided, Flanigan's declined to renew the policy and therefore the Plan ended on December 31, 1983.

Under the Retrospective Premium Agreement, Metropolitan had the obligation, based on claims experience, to calculate whether Flanigan's was due a rebate of premium paid, or whether alternatively Metropolitan was due the payment of an additional premium, or whether the claims experience had been as predicted and no premium adjustment was due. The agreement between the parties specifically provides that this calculation will be made by Metropolitan "immediately".

Upon discontinuation of the Plan, Jeffrey D. Kastner, acting as general counsel for the debtor, reviewed the Plan and the payments made thereunder and concluded that the claims experience under the Plan had been about as expected. Thus, it appeared to Flanigan's that they would not be entitled to a rebate of premium under the Retrospective Premium Agreement, and furthermore, that Flanigan's would not owe Metropolitan much, if any, additional premium under the agreement. Subsequently, Mr. Kastner received a letter dated January 19, 1984 from Metropolitan assuring that the debtor would be advised "shortly" regarding any amounts due.

Flanigan's fiscal year ended on September 30, 1984. Having received no indication from Metropolitan that amounts remained due under the Plan, and following generally accepted accounting practices, Flanigan's did not carry Metropolitan on its books as a contingent creditor. Likewise, Flanigan's received no statement from Metropolitan indicating amounts were owed during fiscal 1985, and Metropolitan was not included as a creditor on Flanigan's books during the fiscal year ending September 30, 1985.

In November, 1985, the debtor filed for reorganization with this Court. Since Metropolitan was not known to Flanigan's to be a creditor, Metropolitan was not listed as creditor on the debtor's schedules.

Subsequently, Metropolitan claims that a letter was sent to Jeffrey D. Kastner on October 3, 1986 advising that amounts were owed under the Plan. Mr. Kastner testified that he never received that letter, and its receipt was never confirmed to Metropolitan. Another letter was sent by Metropolitan to Mr. Kastner on March 12, 1987 which was received, and which was Flanigan's first notification that Metropolitan claimed that monies remained due under the Plan. Immediately upon receipt of that letter, Mr. Kastner contacted Metropolitan by telephone and advised them that the Company was being reorganized and that a confirmation hearing was scheduled before this Court on April 13, 1987. Although Mr. Kastner advised Metropolitan that they should act promptly, and before the Court's confirmation hearing, Metropolitan neglected to file its claim with this Court until June 2, 1987.

The cases consistently hold that a debtor is held to a standard of using "reasonable diligence" in listing its creditors. See *In Re: Brown,* 27 B.R. 151 (Bkrtcy. N.D.Ohio, W.D.1982), *In Re: Fauchier,* 71 B.R. 212 (9th Cir. BAP 1987) and *In Re: Lorenzen,* 21 B.R. 129 (Bkrtcy.N.D.Ohio, W.D.1982). Thus, the issue before this Court is whether Metropolitan can meet its burden of proving that Flanigan's failed to use reasonable diligence by not listing Metropolitan as a creditor.

In asserting its alleged claim, Metropolitan first claims that it is owed monies under the Special Premium Account Agreement ("SPA"). However, the parties are in disagreement over the interpretation of that portion of the contract. That agreement provides that the amounts attributed to the Special Premium Account (on the debtor's monthly statements to Metropolitan) shall become due and payable by Flanigan's to Metropolitan, "If the kinds of insurance subject to this Agreement are discontinued while this agreement is in effect ..." Metropolitan contends that this clause means that the SPA amount becomes due upon any discontinuance of the

Plan. Flanigan's, on the other hand, contends that the SPA amount represents Flanigan's savings by having a partially self-insured plan and that the SPA amount is only payable to Metropolitan if the Plan is terminated in mid-stream, i.e. "while this agreement is in effect." It's undisputed that the Plan was not discontinued while it was "in effect", but that the Plan ran to its renewal date and then was not renewed. In light of the applicable Florida law that insurance contracts must be liberally construed in favor of the policyholder and against their drafters (See, *Stuyvesant Ins. Co. v. Butler*, 314 So.2d 567 (Fla.1975) and *Travelers Ins. Co. v. Smith*, 328 So.2d 870 (Fla. 3d DCA 1976)), the Court accepts Flanigan's interpretation and finds that no monies are owed by Flanigan's to Metropolitan under the SPA agreement. Thus Metropolitan was not a known creditor to Flanigan's under that agreement. Alternatively, even assuming Metropolitan's interpretation of the contract to be correct, Metropolitan's delay of 34–months before asserting its interpretation left Flanigan's with its own interpretation for that period. Having heard nothing from Metropolitan to the contrary, it was reasonable for Flanigan's to assume during that time that its understanding of the contract was correct. Thus, even under that scenario, Metropolitan was not a known creditor of Flanigan's at the critical time of the filing of the debtor's schedules.

The Court also finds that it is uncontested that the amount attributed to the SPA account was easily ascertainable as of the policy's termination on December 31, 1983. In fact, as previously mentioned, Metropolitan sent Flanigan's a letter dated January 19, 1984, stating that Flanigan's would be notified "shortly" of any amount owed under the SPA agreement. However, Metropolitan has not provided this Court with any explanation as to why, if this amount was in fact owed, no claim for it was attempted to be made for over 2½ years.

Second, Metropolitan claims to be owed $6,983.44 under the Excess Risk Agreement. Metropolitan contends that there was an overdraft in the "Flanigan's Enterprises Benefits Account" which they covered, and which should be reimbursed by Flanigan's. However, the Excess Risk Agreement specifically provides that Flanigan's is only responsible to pay amounts from the "Flanigan's Enterprises Benefits Account" up to Flanigan's aggregate exposure. In fact, the testimony of Jeffrey Kastner was uncontradicted that Flanigan's has paid its total aggregate exposure. Therefore under the Excess Risk Agreement, the amount of any overdraft in the account is the responsibility of Metropolitan. Here again, even assuming arguendo that Metropolitan's position is correct and Flanigan's owed Metropolitan money under the excess risk agreement, it is undisputed that Flanigan's interpreted the contract otherwise and that Flanigan's was unaware that there was any disagreement or claim by Metropolitan under that agreement. Since Flanigan's heard nothing for 33 months after Metropolitan sent a letter stating that Flanigan's would be advised "shortly" as to any amounts claimed owed, Flanigan's reasonably concluded that no debt existed.

Finally, Metropolitan claims to be due an additional premium under the Retrospective Premium Agreement (Exhibit "C"). That agreement provides that, using complicated formulas based on claims experience, a calculation shall be made at each renewal date of the policy, and *immediately* after the discontinuance of the policy, to determine whether there should be any adjustment of premium. Under the agreement, Flanigan's may be entitled to a rebate of premium, Metropolitan may be entitled to collect an additional premium or no adjustments may be needed, depending on the claims experience. In fact, Jeffrey D. Kastner testified that just before discontinuance of the Plan he reviewed the balances in the "Flanigan's Enterprises Benefits Account". Based on his computations, the claims experience appeared to be close to that expected under the Plan. Therefore, Mr. Kastner concluded that Flanigan's was not due any rebate of premium from Metropolitan, and furthermore, concluded that Flanigan's owed no additional premium to Metropolitan. Since the Retrospective Pre-

mium Agreement specifically provided Metropolitan would make the necessary calculations to determine whether any adjustment of premium was needed, and would do so "immediately," and since Mr. Kastner received written confirmation from Metropolitan in January, 1984 that he would receive notification from Metropolitan "shortly" of amounts due, Mr. Kastner appropriately concluded that no monies were owed Metropolitan when he heard nothing from Metropolitan by the end of Flanigan's fiscal year on September 30, 1984. Therefore, Metropolitan was not carried on the Company's books as a contingent creditor after September 30, 1984, and was not listed as a creditor when the Company filed its list of creditors with this Court in November, 1985. Flanigan's properly contends that it used reasonable diligence to list all creditors and that it was reasonable for Flanigan's to conclude that Metropolitan was not a creditor. Flanigan's agreement with Metropolitan required Metropolitan to act "immediately" and Flanigan's heard nothing from Metropolitan during the 22 months between the discontinuance of the policy and Flanigan's listing of creditors.

Metropolitan's customer service specialist, Elizabeth Montemagno, conceded during her testimony that Metropolitan had failed to provide their statement to Flanigan's "immediately" as required by their contract, or "shortly" as promised in their letter. She further admitted that she could give no explanation for this failure.

■ The Court rejects the testimony of Metropolitan's other witness, group representative Timothy Golden, that a delay of 34–months between the termination of the agreements and Metropolitan's first attempt to notify the debtor that monies were due constituted a determination by Metropolitan "immediately after the discontinuance of this policy" of the amount owed as required by the contract between the parties. Mr. Golden's further testimony that the 33–month period between Metropolitan's letter in January, 1984 promising that the debtor would be notified "shortly" of any money owed and Metropolitan's first attempt to notify debtor of the alleged debt constitutes notification "shortly" is unrea-

sonable and likewise rejected. In rejecting this testimony, the Court relies not only on common sense and a reasonable interpretation of the terms "immediately" and "shortly", but also on the failure of Metropolitan to present any testimony to establish why it took such an extreme length of time for Metropolitan to prepare and present its terminal financial statement to the debtor. Metropolitan's first witness, Elizabeth Montemagno, testified that the terminal financial statement couldn't be completed until all the "run-off" claims under the plan were completed, and then enumerated multiple accounting steps that would be taken by various personnel at Metropolitan to complete and check the terminal financial statement. However, on cross-examination, Ms. Montemagno admitted that the standard time to complete run-out claims was 9 months and she had no knowledge or explanation as to why it took an additional 26 months to prepare the terminal financial statement. In fact, although the burden of proof rests with Metropolitan, Metropolitan failed to produce any witness who participated in the preparation of the terminal financial statement, or who had any personal knowledge as to specifically why its preparation and transmittal to the debtor took 34 months. Furthermore, Ms. Montemagno testified that it was Metropolitan's practice to prepare, along with the terminal financial statement, a commentary explaining the final statement. However, Ms. Montemagno testified that she didn't know if such a commentary was prepared in this case, but that she had found none. No such document was produced by Metropolitan during the Court's hearing. No explanation was given by Metropolitan for the lack of that document although the commentary might explain Metropolitan's 34 month delay in producing its final statement to the debtor.

Finally, although Metropolitan bore the burden of proof in this matter, Metropolitan's witnesses gave no direct testimony on the issue before this Court, i.e., was Metropolitan a known creditor? The only two witnesses directly asked this question were Jeffrey Kastner and Denise Dickens. Mr.

Kastner testified that Metropolitan was *not* a known creditor of Flanigan's. Ms. Dickens, a C.P.A., likewise testified that her company audited Flanigan's annually and that, following generally accepted accounting principles, Metropolitan was not a known creditor of Flanigan's.

Metropolitan places heavy reliance on the case of *In Re: The Charter Company*, 68 B.R. 396 (Bkrtcy.M.D.Fla.1986). However, that case is clearly distinguishable from the case at bar. In that case, the creditor sent the debtor a telex requesting payment of a disputed bill prior to the debtor filing for bankruptcy protection. ("On December 30, 1981, Pemex sent a telex to CCOC requesting payment." *Id.* at 397.) That circumstance is wholly distinguishable from the case at bar where no demand for payment was ever sent by the creditor to the debtor prior to the debtor's filing for reorganization. In the case at bar, Flanigan's reasonably concluded that Metropolitan was not a creditor since Flanigan's had received no notification from Metropolitan that any payment was owed. This is particularly true since Metropolitan was contractually obligated to notify Flanigan's "immediately" of amounts owed, and also promised by letter to notify the debtor "shortly" of any monies due.

## CONCLUSION

After conducting its evidentiary hearing as directed by the Circuit Court, this Court finds that Metropolitan has failed to meet its burden of proving that it was a known creditor of Flanigan's. Accordingly, it is

ORDERED that Metropolitan Life Insurance Company's motion for leave to file a late proof of claim is denied and Flanigan's alleged debt to Metropolitan is hereby discharged.

DONE AND ORDERED.