In re FLANIGAN'S
ENTERPRISES, INC., Debtor.

**Bankruptcy No. 85–02594–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Aug. 14, 1987.

See also 75 B.R. 446.

Jeffrey Kastner, co-counsel, Pembroke Pines, Fla., Howard Berlin, Schantz, Schatzman, et al., Miami, Fla., for debtor.

Edward P. Ciafardini, Asst. Gen. Counsel, New York City, for Metropolitan Life Ins. Co.

## MEMORANDUM DECISION

A. JAY CRISTOL, Bankruptcy Judge.

This matter came before the court on June 15, 1987, upon the claimant, Metropolitan Life Insurance Company's (hereinafter referred to as "Metropolitan"), application for leave to file a late proof of claim, pursuant to Bankr.Rules 3003(c) and 9006(b)(1).

On or about November 1, 1982, the debtor entered into a group health insurance contract with Metropolitan. As part of said contract, the debtor and Metropolitan agreed to special financial arrangements, namely, a Special Premium Account Agreement; an Excess Risk Agreement and a retrospective premium arrangement; all of which were effective November 1, 1982. These special financial arrangements are entered into pursuant to a policyholder's request. The effect of these special financial arrangements is to afford a policy holder an increased cash flow advantage during the course of a policy period. It is undisputed that under these arrangements, Metropolitan has the contractual right to secure additional monies from the policyholder at the close of a policy year or upon discontinuance of the policy depending upon the claims' experience of the group health plan.

The debtor cancelled its group insurance contract with Metropolitan (and, therefore, all of the special financial arrangements in connection therewith) effective midnight, December 31, 1983. When a group policy with a retrospective premium arrangement cancels, an insurer must wait until it receives all of the "run-out" claims' totals before it can prepare a terminal financial accounting statement for the group. (Run-out claims are those which were incurred prior to the cancellation of the policy, but are open and unreported as of the cancellation date.) In this case, the reporting of run-out claims continued after the policy was cancelled and Metropolitan did not receive the final claims' reconciliation until January 1986. The terminal financial accounting statement was then prepared by Metropolitan and reflected an amount of $128,105 owed by Flanigan's to Metropolitan (as a result of the special financial arrangements described above). As of the date of their application to file a late proof of claim, Metropolitan claims the amount of indebtedness owed by debtor to Metropolitan totals $135,088.44.

On November 4, 1985, the debtor filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. The schedules of assets and liabilities filed by the debtor did not include Metropolitan as a creditor and as a result, Metropolitan did not receive any written notices in these proceedings. On October 3, 1986, nine months after the final reconciliation of claims was prepared, Metropolitan forwarded its terminal financial accounting statement to the debtor, the receipt of which was not acknowledged by the debtor. A follow-up letter, dated March 12, 1987, was also forwarded by Metropolitan to the debtor, receipt of which was acknowledged. By telephone conversation on or about March 25, 1987, Metropolitan was advised of these bankruptcy proceedings, including the fact that the debtor's confirmation hearing was scheduled for April 13, 1987. Notwithstanding this notice, Metropolitan did not file its application for leave to file a claim until June 2, 1987. During this inter-

im, debtor received its order of confirmation on May 5, 1987.

The determinative issue in this case, is whether the debtor was aware of Metropolitan's claim on the day it filed the schedules associated with its chapter 11 petition or became aware of such claim within a reasonable time thereafter sufficient to allow it to amend said schedules. If the debtor was aware of the claim, regardless of its status, it was obligated to schedule it. 11 U.S.C. § 521(1). Debtor's failure to schedule such a claim would bar its discharge from that claim. 11 U.S.C. § 523(a)(3). However, where the debtor has no knowledge of a claim and in good faith files its petition with as thorough a schedule of debts as possible, the debtor has done all that should be done under the Code. *In re Siouxland Beef Processing Company*, 55 B.R. 95, 100 (Bankr.N.D.Iowa 1985).

Bankruptcy Rules 3003(c) and 9006(b), provide a mechanism designed to cure inequities which can arise when a creditor fails to file a proof of claim prior to expiration of the bar date. Bankruptcy Rule 3003(c) authorizes the court, "for cause shown" to extend the time in which to file a proof of claim. However, B.R. 3003(c) must be read in conjunction with B.R. 9006(b) which states, that when a party moves for extension of time after expiration of a set time period, it must show that its failure to act before the court's deadline, was the result of excusable neglect. *In re South Atlantic Financial Corporation*, 767 F.2d 814, 817, (11th Cir.1985); *In re William B. Wilson Manufacturing Company*, 59 B.R. 535, 537 (Bankr.W.D.Texas 1986).

Courts have consistently found the lack of notice to "known" creditors to constitute the paradigm example of excusable neglect and freely grant motions to file late claims on behalf of known creditors who through no fault of their own, had no notice of the bar date. See e.g. *In re Yoder Company*, 758 F.2d 1114, 1121 (6th Cir.1985); *In re South Atlantic Financial Corporation*, supra at 818; *In re William B. Wilson Manufacturing Company*, supra 59 at 538. Therefore, in the instant case, if the debtor was aware of Metropolitan's claim

at the time it filed its chapter 11 petition, Metropolitan was entitled to formal notice of the bankruptcy proceedings. Furthermore, Metropolitan's failure to receive such notice would constitute excusable neglect sufficient to allow it to file a late proof of claim.

Metropolitan relies on the case of *In re Charter Company*, 68 B.R. 396 (Bankr.M.D.Fla.1986) as requiring this court to grant its application to file a late proof. In *Charter Company*, Pemex, a Mexican crude oil supplier, and the debtor entered into a sales contact regarding the purchase of oil from Mexico. Between May 31, 1981 and June 3, 1981, the debtor took delivery of the oil and was billed pursuant to the terms agreed to in the contract, $13,780,237 for the oil. On June 3, 1981, Pemex reduced its price for oil by $4 per barrel effective June 1, 1981. Debtor, without consulting with Pemex, deducted from the bill $1,589,304, an amount determined by debtor to reflect the price reduction and sent Pemex payment for the balance. On December 30, 1981, Pemex notified debtor of the discrepancy and demanded payment of the $1,589,304 they were contractually entitled to. Debtor, nevertheless, did not respond to the demand and Pemex took no further action regarding the dispute.

On April 20, 1984, debtor filed for relief under chapter 11 of the U.S. Bankruptcy Code. Debtor did not list Pemex as a creditor in its schedules nor were its schedules amended to include Pemex as a creditor at a later date. Therefore, Pemex did not receive notice of the bankruptcy, nor of the bar date for filing proofs of claims in order for it to participate in the proceedings. Pemex's first notice of the bankruptcy was not received until April, 1986 when it was served with a summons and a complaint for turnover. On June 30, 1986, Pemex filed its motion to file a late proof of claim.

Judge Proctor of the U.S. Bankruptcy Court for the Middle District of Florida, found Pemex to be a "known" creditor to the debtor at the time the debtor filed its petition. The court rejected the debtor's contention that it believed the dispute was resolved in early 1982 without liability to

the debtor. The court was not persuaded by the debtor's evidence which consisted solely of the testimony of two employees of the debtor who while generally aware of the dispute with Pemex, were not specifically involved in the subject contract and dealings with Pemex. The employees of the debtor testified that they dealt with Pemex representatives regarding other matters and that because the subject of the dispute never came up in these dealings, it must have been resolved. The court held that at the time the debtor filed its schedules, it knew that there was at least a possibility of a claim being made by Pemex. Having held Pemex to be a known creditor, the court ruled that it was entitled to formal notice of the bankruptcy proceedings and, therefore, granted Pemex's motion to file a late proof of claim.

In the instant case, the court finds the series of events preceding the debtor's filing of its petition and the sequence of events subsequent to the filing, highly distinguishable from those of the *In re Charter Co.* case. In contrast to the actual dispute the parties in *In re Charter Co.* had concerning the price due for the delivery of oil, the parties in the instant case terminated the policy in an amicable manner. The existence of an actual dispute would tend to put the debtor on notice that the potential of a claim being asserted against it still existed. Moreover, the debtor *In re Charter Co.*, breached the contract between the parties on its own initiative by remitting a reduced payment to Pemex, notwithstanding no modification of the price term between the parties. In contrast, the court finds the debtor, in the instant case, did not engage in such bad faith conduct. Furthermore, unlike the creditor's action in *In re Charter Co.*, whereby it formally notified debtor of its claim six months after the dispute first arose and a little over two years before the debtor filed for bankruptcy, Metropolitan took over two years after policy termination to determine the amount of its claim and then waited an additional nine months before even attempting to notify debtor of its claim.

Finally, Metropolitan relies on the contractual provisions of its arrangement with debtor that premiums would potentially come due post-termination, as evidence that debtor knew at least of the "possibility of a claim" being asserted after the policy terminated. The court accepts Metropolitan's premise, however, believes Metropolitan took an unreasonably long time after termination to determine the amount, if any, due from debtor and notify the debtor of this claim within a reasonable period of time thereafter. The record indicates it was almost three years from the date of policy termination until Metropolitan attempted to notify debtor of its claim. The court finds Metropolitan was not prudent in its procedures to terminate its relationship with debtor and notify the debtor of the amount due post-policy termination. The court believes the debtor filed its schedules with as thorough a listing of debts as possible and that the facts do not indicate that the debtor knowingly failed to list Metropolitan as a creditor.

Having found Metropolitan to be an unknown creditor, it must show that its failure to file a timely proof of claim was the result of excusable neglect. *In re Charter Co.*, supra, at 398. Courts have found excusable neglect to require that the movant must show that, "the failure to timely perform a duty was due to circumstances which were beyond the reasonable control of the person whose duty it was to perform". *In re South Atlantic Financial Corporation,* supra at 817.

Pursuant to the terms of the insurance agreements, it was the duty of Metropolitan to conduct a terminal accounting and provide the debtor with a final financial statement indicating any balance owed by debtor. The facts indicate Metropolitan took almost three years after contract termination to provide the debtor this information. Furthermore, while Metropolitan was aware of the sums due in January 1986, it waited approximately nine months before attempting to notify debtor of its claim and possibly did not actually notify debtor of said claim until March 1987, over a year subsequent to its preparation of the final financial accounting.

The court believes Metropolitan did not act prudently in bringing its contractual relationship with debtor to a close and that had it done so, debtor would have been aware of Metropolitan's claim and listed them on its schedules. The court finds the performance of the duty to prepare the terminal financial accounting and inform the debtor of its debt was under the exclusive control of Metropolitan and that its failure to execute said duty in a reasonably timely and prudent manner, was the cause of its failure to receive formal notice from the debtor of the bankruptcy proceedings.

Finally, the court questions the good faith of Metropolitan. This is a legitimate concern in determining whether or not to permit the late filing of a proof of claim, see e.g. *In re Lester Witte & Company,* 52 B.R. 436, 438 (Bankr.N.D.Illinois 1984) (listing the good faith of the creditor among the factors courts look to in ruling on motions to file late proofs of claims). In the instant case, the court is concerned about the approximately three year delay in notifying the debtor about its claim and the fact that Metropolitan waited over two months, after receiving notice of the bankruptcy and the debtor's upcoming confirmation hearing, to file its motion. The significance of this delay is that Metropolitan had the opportunity to file its motion prior to the debtor's confirmation hearing. Instead, it allowed this case to proceed from pre-confirmation to post-confirmation when the debtor's order of confirmation was entered on May 5, 1987. The court finds Metropolitan's unreasonable delay in notifying the debtor of sums due under the insurance contract and their neglect to timely assert their rights before this court, constitutes laches and a lack of good faith. Accordingly, it is

ORDERED that Metropolitan Life Insurance Company's motion for leave to file a late proof of claim is denied.