**In re the DREXEL BURNHAM LAMBERT GROUP INC.,
et al., Debtors.**

**Bankruptcy 90 B 10421.**

United States Bankruptcy Court,
S.D. New York.

Feb. 19, 1993.

P. Gruenberger, H. Spierer and L. Braun, Weil, Gotshal & Manges, New York City, for the Drexel Burnham Lambert Liquidating Trust (the "Trust"), as successor in interest to Drexel Burnham Lambert Group Inc. (DBL Group) and its affiliated companies (collectively, "Drexel" or "Debtor").

A. Nisselson and A. Heath, Brauner Baron Rosenzweig & Klein, New York City, for Indian Motocycle Associates, Inc. (claimant).

## MEMORANDUM OF DECISION ON APPLICATION TO FILE LATE PROOF OF CLAIM

FRANCIS G. CONRAD, Bankruptcy Judge.[*]

This matter is before us [1] on Claimant's motion for an order granting permission to

---

[*] Sitting by special Designation.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York,

file a late proof of claim. The issue presented is whether a debtor-guarantor, without knowledge of prepetition default that would give rise to prepetition liability, must provide actual notice of a claims bar date to a beneficiary of an unconditional guaranty.[2] We hold that under the specific facts of this case and the broad definitions of "claim" and "creditor" provided in 11 U.S.C. § 101(5) and (10), Claimant was a known creditor and therefore was entitled to actual notice of the bar date. The claim, however, will be disallowed both on the merits and under the doctrine of laches.

### FACTS

Claimant, Upper State Street IMB Corporation ("IMB"), and I.M. Rehab, Inc. ("IMR") entered into a limited partnership agreement on May 23, 1989, for the development of low to moderate income housing in Springfield, Massachusetts. The partnership agreement was amended in 1990 without Debtor's knowledge. IMB and Claimant are both general partners. Claimant is the managing general partner, and IMR is a limited partner. IMR is a wholly-owned subsidiary of Debtor.

Under section 3.2 of the amended partnership agreement, IMR was obligated to pay capital contributions to the partnership in ten annual installments. This obligation was restated in the subscription agreement and was evidenced by a promissory note made in 1989, by IMR, to the order of the partnership. The promissory note was replaced with a new note in 1990.

On May 23, 1989, Debtor executed an unconditional guaranty of IMR's obligations in favor of Claimant. The guaranty agreement provided that various forms of notice are acceptable to the parties, but the agreement did not expressly require Claimant to notify Debtor of IMR's default

to trigger debtor's obligation as guarantor. The agreement stated that Massachusetts law governs all disputes concerning the guaranty.

IMR paid the first and second installment as well as an initial capital contribution. IMR, however, failed to pay additional installments and ultimately defaulted on October 22, 1990. The default triggered the partnership agreement's acceleration clause, thereby making all installments due and owing at that time.

On February 13, 1990, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* Debtor did not list Claimant as a creditor in its filed schedules of assets and liabilities, nor did Debtor later amend its schedules to include Claimant as a creditor.

Bankruptcy Judge Buschman, by a June 20, 1990 order, fixed November 15, 1990 ("the Bar Date"), as the last day for all creditors and equity holders to file proofs of claim against Debtor. The order provided that known creditors would receive actual notice of the Bar Date and unknown creditors would receive notice by publication.

On August 15, 1990, Debtor mailed notice of the bar date to each known creditor listed in the schedules. All creditors not listed in the schedules received notice by publication, on three different dates, in 36 national and regional newspapers. Notice was issued in newspapers distributed in Massachusetts, including the *Boston Globe,* the *New York Times,* and the *Wall Street Journal.* Claimant did not file a proof of claim before the Bar Date. Claimant admits having general knowledge of Debtor's bankruptcy before the Bar Date.

---

dated July 10, 1984 (Ward, Acting C.J.). The General Reference was withdrawn by Pollack, D.J., on February 19, 1991, but in the same order core and non-core related matters were re-referred to us. This is a core matter under 28 U.S.C. § 157(b)(2)(A), (B) and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bankr.P. 7052.

**2.** King Solomon warned: "He that is a surety for a stranger shall smart for it; and he that hateth suretyship is sure." Proverbs, 11:15. See also, Proverbs, 17:18: "A man without sense gives a pledge, and becomes surety in the presence of his neighbor." To which we add: A surety who knows his obligation must give notice to the obligee when in bankruptcy.

Claimant delivered a default notice to IMR on April 10, 1992, 18 months after the occurrence of the default. In its application to enlarge the time allowed for filing a timely proof of claim, Claimant now seeks $3,285,220.00 from Debtor under the guaranty agreement, exclusive of interest, fees, and expenses.

## ARGUMENTS OF THE PARTIES

Claimant cites lack of actual notice of the bar date as the chief reason underlying its application to file a late proof of claim. Claimant argues that Debtor knew or should have known that Claimant held a contingent claim following Debtor's unconditional promise to pay under the guaranty agreement. Although it had general knowledge of Debtor's bankruptcy, Claimant argues that its status as a known creditor entitled it to actual notice of the bar date, rather than notice by publication.

Debtor argues that Claimant was an unknown creditor because Debtor's accounting practices had not recognized the guaranty obligation as an existing debt. Debtor also states that it was entitled to notice of default under the guaranty agreement, and that Claimant's failure to provide notice excuses Debtor from its obligations as guarantor. Furthermore, assuming, *arguendo*, that Claimant was entitled to actual notice of the bar date as a holder of a known claim, Debtor argues that it was released from its guarantor obligation following the "substantial" amendment of the partnership agreement on May 23, 1990. Finally, Debtor argues that even if the guaranty obligation rises to the level of a contingent claim that should have been listed in its schedules, Claimant should not be permitted to enlarge the bar date because Claimant waited too long to step forward with its application to file a late proof of claim.

## DISCUSSION

A. Notice standards.

■ The Supreme Court has repeatedly stated that .due process embodies a basic principle of justice, that federal and state adjudications are binding only when parties are provided with sufficient notice and an opportunity to be heard. The Fifth and Fourteenth Amendments protect against deprivation of "life, liberty or property, without due process of law...." A cause of action, here, a claim against the estate, constitutes property within the meaning of the Amendments and cannot be forfeited through proceedings lacking in due process. Notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their [claims]." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ *Mullane's* requirement that notice be "reasonably calculated ... under all circumstances" necessitates an inquiry into the particular facts of each case to determine if a given form of notice complies with due process. *See, Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 483, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988). Obviously, the circumstances here concern the policies and protections afforded in Chapter 11 of the Bankruptcy Code when a party fails to file its proof of claim prior to the court ordered bar date. We therefore consider the purposes of a bar date in relation to the due process requirements of the Fifth Amendment.

■ The issuance of the claims bar date is an essential feature of the reorganization process because it provides a date certain after which a plan can be negotiated, formulated, and eventually confirmed. The bar date is much more than a means to limit claims; it provides finality to a process that will ultimately lead to the rehabilitation of the debtor and the payment of claims under a plan of reorganization. *See, Florida Department of Insurance v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 148 B.R. 1002 (S.D.N.Y.1993); *In re Drexel Burnham Lambert Group, Inc.*, 129 B.R. 22, 24, 26 (Bankr.S.D.N.Y.1991).

■ Federal Rules of Bankruptcy Procedure 3003(c) and 9006(b) provide a mecha-

nism designed to cure inadequacies that may arise when a creditor fails to file a timely proof of claim. Rule 3003(c) authorizes the court, "for cause shown," to extend time to file a late proof of claim. In the Second Circuit, Rule 3003 is read in conjunction with Rule 9006. *See, In re Drexel Lambert Group, Inc., supra,* 129 B.R. at 25. Rule 9006(b) provides that when a party moves for an extension of time after expiration of a set time period, that party must show that its failure to act before the court's deadline was the result of "excusable neglect."

■ There are three factors to be considered in determining whether a party's failure to file a claim was the result of excusable neglect: the adequacy of the notice provided, the source of the delay and the sophistication of the creditor, and the prejudice that will inure to the debtor should the failure to act be overlooked. *See, In re Chateaugay Corp.,* 104 B.R. 617 (Bankr. S.D.N.Y.1989), *In re O.P.M. Leasing Services, Inc.,* 48 B.R. 824, 830–831 (S.D.N.Y. 1985).

■ In the rare cases in which courts have found excusable neglect, the failure to file in a timely manner was the result of "unique or extraordinary circumstances beyond the reasonable control of the delinquent party." *Florida Department of Insurance v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 148 B.R. 1002 (S.D.N.Y. 1993) (citation omitted). Requests to file late proofs of claim are strictly scrutinized according to the discretion of the bankruptcy judge. *Id.,* citing, *In re Drexel Burnham Lambert, Inc., supra,* 129 B.R. at 24. Before discussing whether Claimant meets the standards for filing a late proof of claim, we must first determine whether the notice afforded to Claimant complies with the constitutional principles of due process as applicable in bankruptcy law.

■ For purposes of determining constitutionally acceptable notice of an impending bar date, bankruptcy law divides creditors into two groups: known and unknown. According to well-established case law, due process requires that a debtor's known

creditors be afforded actual notice of the bar date. *City of New York v. New York, New Haven & Hartford R.R.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *In re Golden Distributors, Ltd.,* 128 B.R. 349 (Bankr.S.D.N.Y.1991). Frequently, as was the case here, actual notice is provided by certified or first class mail.

■ For obvious reasons, debtors need not provide actual notice to unknown creditors. It is widely held that unknown creditors are entitled to no more than constructive notice (i.e., notice by publication) of the bar date. *In re Thomson McKinnon Securities Inc.,* 130 B.R. 717, 719 (Bankr. S.D.N.Y.1991) (citations omitted); *See, In re O.P.M. Leasing Services, Inc., supra,* 48 B.R. at 831. Given the settled law concerning the respective notice requirements for known and unknown creditors, the determinative factor in this motion is whether Claimant was a known creditor when Debtor compiled its schedules. If Claimant was a known creditor, it was entitled to actual notice of the bar date and will be permitted to file a proof of claim. If Claimant was unknown, the excusable neglect standard applies. The parties do not dispute that Claimant fails to satisfy the necessary showing of excusable neglect.

■ Several basic principles underlie the determination of whether a creditor is known or unknown. Unknown creditors are creditors whose claims are not reasonably ascertainable or are speculative or conjectural. *In re Thomson McKinnon Securities Inc., supra,* 130 B.R. at 79 (citation omitted). It is, therefore, reasonable to dispense with actual notice to unknown creditors, provided that the debtor makes "reasonably diligent efforts" to uncover their identities and claims. *Id.,* quoting, *Mennonite Board. of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983).

■ Reasonable diligence in ferreting out known creditors will, of course, vary in different contexts and may depend on the nature of the property interest held by the debtor. *See, In re Thomson McKinnon Securities Inc., supra, citing,*

*Small Engine Shop, Inc. v. Cascio,* 878 F.2d 883, 888–889 (5th Cir.1989). Applying *Mullane's* "reasonable under the circumstances" standard, due process requires a reasonable search for contingent or unmatured claims so that ascertainable creditors can receive adequate notice of the bar date. What is reasonable depends on the particular facts of each case. A debtor need not be omnipotent or clairvoyant. A debtor is obligated, however, to undertake more than a cursory review of its records and files to ascertain its known creditors.

 Known creditors are defined as creditors that a debtor knew of, or should have known of, when serving notice of the bar date. Among known creditors may be parties who have made a demand for payment against a debtor in one form or another before the compilation of a debtor's schedules. Typically, a known creditor may have engaged in some communication with a debtor concerning the existence of the creditor's claim. This communication by itself does not necessarily make the creditor known. Direct knowledge based · on a demand for payment is not, however, required for a claim to be considered "known." A known claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it.[3]

 Claimant alleges that because of the guaranty it is a known creditor with a contingent claim and therefore was entitled to actual notice of the bar date by certified mail. The Bankruptcy Code supports this position. In bankruptcy, a claim is broadly defined as a

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . . .

11 U.S.C. § 101(5). Similarly, a creditor is broadly defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief." 11 U.S.C. § 101(10). Applying the statutory language to the facts now before us, we find Claimant is clearly a holder of a contingent claim. Whether Debtor knew of the guaranty claim, or at least should have known, requires analysis outside the statutory definitions.

 We agree with Debtor that when a debtor has no knowledge of a claim and files its petition in good faith, with as thorough a schedule of debts as possible, the debtor has done all that is required under the Bankruptcy Code. *See, Brooks Fashion Stores, Inc. v. Michigan Employment Security Commission (In re Brooks Fashion Stores, Inc.),* 124 B.R. 436, 444 (Bankr.S.D.N.Y.1991) (citation omitted). At issue here, however, is a slightly different factual situation because Debtor, as an unconditional guarantor of IMR's financial obligations to Claimant, should have been aware of the possibility that Claimant would assert its right to payment under the guaranty.

Debtor argues that it did not know of Claimant's contingent right to payment under the unconditional guaranty agreement because its "accounting principles" prevented it from listing the guaranty as a contingent claim. According to Debtor, its accountants do not list liabilities until it becomes probable or likely that a loss would occur. Debtor contends that it was not within reasonable accounting practices to give Claimant actual notice of the bar date until there was a probability of IMR's default.

Debtor's arguments concerning accounting principles, however, lie on the floor like pennies not worth picking up. While the cited financial reporting principles may have some practical appeal, Debtor cannot

---

**3.** We hasten to add that the debtor's obligation to give actual notice to known creditors does not completely absolve a creditor of its duty to file a proof of claim, or a least a protective proof of claim, to take part in the bankruptcy process. As Chief Justice Marshall stated in *The Mary,* 13 U.S. (9 Cranch) 126, 144, 3 L.Ed. 678 (1815), "it is the part of common prudence for all those who have any interest in [a thing], to guard that interest. . . ." The parties did not ask us to resolve the issue of a creditor's duty to file a proof of claim when it knows about a bankruptcy and thus, we do not discuss it.

avoid the fact that it was party to an unconditional guaranty contract that created a contingent claim. What is required to be revealed in published financial statements under generally accepted accounting principles is sometimes quite different from the publications required to effectuate complete bankruptcy schedules. Debtor knew, or should have known, at the time it filed its schedules, that Claimant may have been entitled to payment under the unconditional guaranty agreement. It is for this reason that a guaranty has been called "a classic illustration of a contingent claim." *In re Barnett*, 42 B.R. 254, 257 (Bankr.S.D.N.Y.1984).

Debtor cites *In re Flanigan's Enterprises, Inc.*, 77 B.R. 963 (Bankr.S.D.Fla.1987), as support for its position that Claimant was an unknown creditor entitled to publication notice of the bar date. In *Flanigan's*, an insurance company failed to provide notice to the debtor, before the bar date, of a claim arising under a terminated insurance contract that permitted retrospective premium adjustment. The insurance company argued the agreement between it and the debtor evidenced the fact that the debtor knew of its potential claim. The court, however, found that the insurance company had sole knowledge that a debt existed and that it was obligated to inform the debtor of the debt. The insurance company's failure to execute its duty to inform in a reasonably prudent and timely manner caused the debtor's inability to schedule the debt. According to the court, the insurance company's own imprudence, rather than the debtor's failure to list the claim, was the cause of the company's lack of formal notice. The court held that the insurance company was an unknown creditor and, thus, had to show excusable neglect to file a late proof of claim. *Flanigan's*, 77 B.R. 963, 966–967.

Although the *Flanigan's* decision resolves an issue similar to the one presented here, we decline to advance *Flanigan's* argument to the specific facts of this case. The facts now before us indicate that Debtor signed a contract that made it unconditionally liable, as a guarantor, for any default of IMR arising under the terms of the partnership agreement. The essence of the guaranty was Debtor's obligation to pay Claimant in the event that IMR did not. Any guarantor knows, especially one as sophisticated as Debtor, that the day may come when it will be called upon to answer for the default of an obligor.

■■■ When comparing a guaranty to any other contract in which a debtor is a party, we conclude that the obligation under an unconditional guaranty puts the guarantor on continuing notice that a contingent claim exists for the payment of a debt. Our conclusion is based on the simple fact that an unconditional guaranty, by its very nature, notifies the guarantor that a debt may be owing at some later date. A guaranty, especially an unconditional guaranty, also puts the guarantor on notice that it may be called upon to pay without notice of default, subject, of course, to contract language to the contrary. We conclude that on the admittedly slippery slope between certainty and metaphysical possibility, an unconditional guaranty evidences a known contingent claim as defined under bankruptcy law.

■■■ Obviously, a debtor need not notify all entities with which it has had contractual relations. *See, Brooks Fashion Stores, Inc. v. Michigan Employment Security Commission (In re Brooks Fashion Stores, Inc.)*, 124 B.R. 436, 444 (Bankr. S.D.N.Y.1991); *In re Thomson McKinnon Securities Inc., supra*, 130 B.R. at 79, citing, *Atlantic Richfield Co. v. Sharon Steel Corp.*, 110 B.R. 205, 206 (Bankr.W.D.Pa. 1990). The touchstone remains, as in *Mullane, supra*, and its progeny, reasonable notice under the individual circumstances of each case. Under the particular facts of this application, we hold that Claimant's status as a beneficiary of an unconditional guaranty rendered it a known creditor entitled to actual notice of the bar date.

B. The merits of the guaranty claim.

■■■ A contract of guaranty is an obligation to answer for the debt of another. A guaranty creates a secondary, rather than a primary, liability because it re-

lates to the independent obligation of the primary obligor and is contingent on the obligor's default. *See, generally, Michaels v. Chemical Bank*, 110 Misc.2d 74, 441 N.Y.S.2d 638 (1981); 63 N.Y.Jur., 2d § 1, *et seq.* In the guaranty relevant here, the parties stipulated that Massachusetts law governs any and all disputes arising from the guaranty agreement.

■ Concerning the merits of Claimant's claim, Debtor first argues that according to the guaranty contract, Claimant was required to provide Debtor with notice of IMR's default before Debtor became liable to pay as guarantor. This argument, however, belies the meaning of the notice provision in the guaranty agreement. The guaranty agreement, in relevant part, merely states what constitutes sufficient notice and the employees authorized to receive notice. The agreement does not address the conditions under which notice must be given. Without rewriting the contract, we cannot say that the parties intended that notice would be a condition for payment under Debtor's guaranty. We, therefore, look to the general law governing guaranty agreements.

■ Under guaranty law, absent a contract provision to the contrary, the beneficiary of the guaranty need not inform the guarantor of a default as a prerequisite to the guarantor's obligation to pay. The guaranty agreement at issue contains no language that modifies this general rule. Moreover, Debtor executed an "unconditional" guaranty of payment in favor of Claimant. In an unconditional guaranty, the creditor, after default, need not pursue its remedy against the principal before looking to the guarantor for payment. Debtor thus cannot claim that it was entitled to specific notice of default without any contract language to substantiate its position.

We find Debtor's second argument regarding the merits of the guaranty claim more persuasive. Debtor asserts that the amendment of the underlying partnership agreement rendered the guaranty unen-

forceable because Debtor did not consent to the amendment. The amendments altered the frequency of IMR's installment payments owing to Claimant.

■ As a general rule, any material or substantial alteration of the terms of the contract made after execution of the guaranty agreement discharges the guarantor, unless the guarantor consents to the modification. *See, University Bank and Trust Co. v. Dunton*, 655 F.2d 23, 24 (1st Cir. 1981) (citations omitted) (summarizing Massachusetts law). According to the facts of this dispute, Debtor neither knew nor consented to the modification of the partnership agreement. We agree with Debtor that the modifications found in the amendment were substantial and material. Debtor is, as a matter of law, released from its obligations under the guaranty agreement.

■ Finally, Debtor states that under principles of laches, Claimant has waived its right to collect under the guaranty agreement because Claimant neglected to pursue its rights in a timely fashion. We agree. In the Second Circuit, the laches doctrine considers the following factors: (1) proof of delay in asserting a claim despite the opportunity to do so, (2) lack of knowledge on the defendant's part that a claim would be asserted, and (3) prejudice to the defendant by the allowance of the claim. *Rapf v. Suffolk County of New York*, 755 F.2d 282, 292 (2d Cir.1985).

The two-year delay between the time that Claimant first became aware of IMR's default and Claimant's demand for payment from the Debtor evidences Claimant's neglect in enforcing its right, if any, to payment under the guaranty agreement. Even with general knowledge of Debtor's bankruptcy,[4] Claimant failed without excuse to undertake any action that would preserve its right under the guaranty, such as filing a protective proof of claim. Allowing Claimant to file a late proof of claim would substantially prejudice Debtor's attempts to pay claims according to the plan

---

**4.** Our holding here is based only on the doctrine of laches and not upon any actual notice of

bankruptcy theories expressed in opinions by this court or other judicial decisions.

of reorganization and would frustrate the administrative goals of the bar date.

Claimant's failure to pursue its rights, coupled with the resulting prejudice to Debtor, necessitates invocation of our equitable powers. We hold that Claimant's claim under the guaranty agreement is time-barred by laches.

## CONCLUSION

Claimant was entitled to actual notice of the claims bar date because a possible right to payment under an unconditional guaranty agreement is a known contingent claim as defined in the Bankruptcy Code and related case law. The claim is, however, disallowed under the general rule that subsequent modification of an underlying partnership agreement, absent consent, discharges the guarantor. The claim is also disallowed as violative of the equitable doctrine of laches.

The parties shall settle an order on five days notice consistent with this Memorandum of Decision.