**In re NATIONAL SPA & POOL INSTITUTE, Debtor.**

**No. 98–18050–RGM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Jan. 22, 2001.

Bradley Evans, Jr., Redmon, Peyton & Braswell, LLP, Alexandria, Virginia, for the debtor.

Christopher S. Moffit, Alexandria, Virginia, for Joshua Pope and Georgianna Feind.

Valerie P. Morrison, Gold, Morrison & Laughlin, P.C., McLean, Virginia, for Shawn Meneely, Don Meneely and Kathleen Meneely.

### MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

On a warm summer day in 1991, Shawn Meneely, then 16 years old, was playing with friends at a neighbor's swimming pool. He dove off a low dive into the pool. His head struck the bottom of the pool and he was rendered a quadriplegic. Seeking compensation for his injuries, he sued National Spa & Pool Institute ("National Spa"). National Spa developed and published voluntary safety standards for the design and construction of swimming pools which were relied upon in the construction of the pool in which he was injured. Meneely contended that the standards were inadequate. A jury in Benton County, Washington agreed. It found damages of $11.0 million and apportioned National Spa's responsibility, at 60 percent. Judgment was entered against National Spa in the amount of $6.6 million on October 29, 1998. National Spa appealed the judgment, and, in order to preserve its financial integrity, filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code in this court on November 5, 1998. After extensive negotiations, an order confirming a consensual chapter 11 plan was entered on March 21, 2000. The plan provided for full payment of all creditors and a lien in favor of Meneely on all of National Spa's assets to assure that his judgment, if sustained on appeal, would be paid in full.

In April 2000, National Spa consummated its confirmed chapter 11 plan. It paid $814,813.02 to unsecured creditors. This constituted full payment of all unsecured claims together with interest. It paid its secured creditor $609,827.05, which was also payment in full. In the course of the chapter 11 case, it expended $398,479.02 for accounting, legal, special litigation

counsel, and creditor's committee counsel fees. It also granted liens on all of its property to pay the Meneely judgment if affirmed on appeal.

On a warm spring day in 1998, Joshua Pope, then 17 years old, was playing with friends at a private swimming pool. He dove off a low dive into the pool. His head struck the bottom of the pool and he was rendered a quadriplegic. Seeking compensation for his injuries, he sued National Spa on May 18, 2000, in Tarrant County, Texas. National Spa, which had not previously been aware of the claim and had not scheduled Pope as a creditor, replied to the suit asserting that the obligation to Pope, if any, had been discharged by the confirmation of its chapter 11 plan. The bar date for filing proofs of claim was March 10, 1999. Pope, unaware of the pendency of this case or of the bar date, had not filed a proof of claim.

Pope filed a motion for an extension of time within which to file a proof of claim which is before the court. National Spa and Meneely oppose the motion. The motion raises two issues. The first is whether there is excusable neglect under F.R.Bankr.P. 9006(b) that would permit a late filed proof of claim, and the second is, if there is no excusable neglect, whether Pope has been deprived of a property right without due process of law under the Fifth and Fourteenth Amendments of the United States Constitution because no notice was given to him of the filing of this case or of the bar date.

### Excusable Neglect

The United States Supreme Court addressed the issue of an extension of time for filing a late proof of claim in a chapter 11 case in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74

(1993).[1] The Supreme Court concluded that:

[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498.

Pope retained Kenneth Pounds on June 23, 1998, to file a personal injury suit against the pool owner. On September 3, 1998, Pope's expert completed his report which opined that the pool's owner was negligent in that the pool had not been constructed in accordance with National Spa's pool safety standards. The report was the basis for the settlement with the pool owner reached on March 29, 1999, in the approximate amount of $1.0 million. In April 1999, Pounds discussed referring the claim to another law firm, Noteboom and Gray, for a possible product liability claim. Noteboom and Gray accepted the case in June 1999, and assigned the case to Michael Haygood, one of its attorneys. On June 2, 1999, Haygood viewed a segment of a television show, *"60 Minutes II,"* which reported on pool safety and pool injuries, and, in particular, the Meneely suit against National Spa. He ordered a transcript of the show. Haygood did no significant work on the case through January 2000, when he left the firm. The firm hired D. Mark Sudderth to replace him and assigned him the Pope case. Sudderth did no significant work on the case until late April 2000, when, after having reviewed the file, he telephoned Fred Zeder who was counsel for Meneely. Zeder

---

1. Federal Rule of Bankruptcy Procedure 9006(b)(1) empowers the bankruptcy court in a chapter 11 case to permit the late filing of a proof of claim if the failure to comply with the earlier deadline was the result of "excusable neglect." Different rules and different considerations apply with respect to an extension of time to file a proof of claim in a chapter 7 or 13 case. In a chapter 7 or 13 case, the ability to grant an extension of time is severely restricted.

mentioned that National Spa was in bankruptcy. This was the first information Pope or his counsel received about National Spa's bankruptcy. The following month, Pope filed suit in Tarrant County, Texas.

■ Up to June 1999, when Pope retained Noteboom and Gray, the facts of this case are substantially similar to those in *Pioneer*. Had a motion to file a late proof of claim been filed at that time, it would in all likelihood have been granted. In *Pioneer*, the motion to file a late proof of claim was filed 20 days after the bar date but before a plan of reorganization was submitted to the court. In evaluating the circumstances, the Supreme Court noted that there was no prejudice to the debtor. The debtor addressed the late filed proof of claim in its plan of reorganization. *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498. Because of the early stage of the case, there was no adverse impact on the judicial proceedings. The court did not find that the reason given by the attorney for having missed the deadline—that he was moving his office and that matters were in somewhat disarray—was sufficient. *Pioneer*, 507 U.S. at 398, 113 S.Ct. at 1499. However, the Supreme Court found it significant that the notice of the bar date was outside the ordinary course in bankruptcy cases. The bar date was not prominently announced or accompanied by an explanation of its significance. In the absence of prejudice to the debtor or to the judicial administration of the case, and in the absence of bad faith, the "unusual form of notice" required a finding that counsel's neglect was excusable. *Pioneer*, 507 U.S. at 398, 113 S.Ct. at 1499–1500. In this case, even though a motion to file a late proof of claim June 1999, came at a later stage than in *Pioneer*, there would have been little danger of prejudice to the debtor. The debtor filed its first plan and disclosure statement on May 27, 1999. It would be another ten months before a revised plan would be confirmed by the court. Had Pope's claim surfaced in June 1999, the debtor could have made appropriate modifications to its pending plan and addressed the claim without danger of significant prejudice. The reason for not having filed a proof of claim up to that point—having no notice of the filing of the petition in this case or of the bar date—is a satisfactory explanation. There is nothing to indicate that Pope's ignorance was contrived or his delay in bad faith.

The difficulty arises with the one year delay between June 1999, and June 29, 2000, the date the motion was filed. There is no explanation why Noteboom and Gray did not undertake any significant work on Pope's case from June 1999, until April 2000. The apparent reason for the activity in April 2000, was that the statute of limitations was about to run on May 31, 2000.[2] Prompt action might have alerted Pope to the bankruptcy earlier. Throughout this period, the firm knew about the Meneely case, the verdict, and the name of the attorney who represented Meneely.[3] Sudderth called Zeder in April 2000, who advised him in the course of the conversation that National Spa had filed bankruptcy. Had the law firm acted promptly in contacting Zeder, it might have become aware of the bankruptcy as early as June 1999. This, though, is somewhat speculative. There was no evidence as to the actual conversation between Sudderth and Zeder. It appears that Zeder volunteered this information. In a different conversation at a different time, the matter might not have been raised.

If a background investigation of National Spa had been undertaken, it is possible that National Spa's bankruptcy would have surfaced earlier even without Zeder's disclosure. National Spa points out that an

---

**2.** In fact, the automatic stay, which was unknown to Pope and his counsel, tolled the running of the statute of limitations.

**3.** There is no evidence to suggest that National Spa's bankruptcy was mentioned on the *60 Minutes II* show.

article published in the July 31, 1999, *Fort Worth Star–Telegram* concerning swimming pools stated that National Spa filed a chapter 11 petition in bankruptcy. In addition, there was an article in the May 28, 1999, *Wall Street Journal* which also stated that National Spa filed a voluntary chapter 11 petition in bankruptcy. National Spa points to three issues of *Aqua* which heralds itself as "The Business Magazine for Spa and Pool Professionals." The January, May and June 1999, issues all refer to National Spa as having filed a voluntary chapter 11 petition. Several editions of *Pool and Spa News* also state that National Spa filed a voluntary chapter 11 petition, but only the November 25, 1998, issue of *Pool and Spa News* stated that the bankruptcy was filed in Alexandria, Virginia. There is, however, no duty to conduct a background investigation of a prospective defendant and these articles did not come to Pope's or his counsel's attention.

■ The publicity that a bankruptcy case receives is a circumstance that may have an impact on the equitable balancing test required by *Pioneer*. It cannot be said in this case that the chapter 11 bankruptcy of National Spa was particularly well known to the general public. The publications noted by National Spa are, except for the two newspapers, trade publications not directed to the general public. There is no reason to believe that the two trade publications, *Aqua* and *Pool and Spa News*, should have come to Pope's or his counsel's attention.

While there is no explanation of Pope's delay, there was no duty to proceed more quickly, there was no information that came to Pope's attention that placed him on any inquiry notice, and there is no indication that the delay was occasioned by bad faith. Pope, while having an interest in resolving this matter, had no reason to believe, but for the statute of limitations, that there was any time bar. His conduct was neither neglectful nor culpable.

■ It is the other side of the equation, the danger of prejudice to the debtor [4] and the impact on these proceedings, that is determinative in this case. Here, the potential prejudice to the debtor may be significant. The amount of Pope's claim could be similar to Meneely's claim. The objective of reorganization under chapter 11 is to pay creditors while preserving the economic viability of the debtor. These competing goals are reflected in the confirmation requirements. 11 U.S.C. § 1129. One of those requirements, the feasibility requirement in § 1129(a)(11), requires that confirmation of the chapter 11 plan not be likely to be followed by liquidation or further reorganization. If allowing Pope's claim would render performance under the plan impossible, or make either liquidation or the need for further reorganization likely, an extension of time ought not be granted. In many cases, the continued viability of the reorganized debtor is necessary for satisfaction of creditors' claims. Here, all creditors except Meneely have been paid and provision has been made for paying Meneely. This does not, however, eliminate the consideration for the continued viability of National Spa or the impact of the prospective claim on the feasibility analysis that was a part of the confirmation process.

■ The critical element with respect to prejudice is whether the debtor, pursuant to its confirmed plan, can fully perform its confirmed plan if Pope's claim is allowed. If the debtor could satisfy a potential judgment in favor of Pope within the framework of its confirmed plan, there may well not be sufficient prejudice to deny Pope the right to participate as a creditor in this plan. On the other hand, if it is not feasible under the confirmed plan for National

---

4. The Supreme Court did not include prejudice to the creditor in its calculus. Denial of Pope's motion will greatly prejudice Pope as would denial of a similar motion in any other case. His claim, if any, would be discharged without participating in the chapter 11 distribution. 11 U.S.C. § 1141(d)(1)(A)(i).

Spa to satisfy a potential judgment in favor of Pope, the motion should be denied. To allow the late claim in those circumstances would destroy the plan and place National Spa's continued viability in question.

It is true that National Spa spent a significant amount of money to pay all of its creditors in full with interest. It encumbered its remaining assets to assure that the Meneely judgment, if affirmed on appeal, will be paid in full. It is questionable whether the debtor can be placed back in the position that it was in prior to consummation of its chapter 11 plan. It may well have given up its right to pursue preferences. It would be difficult to recover any of the payments made pursuant to the confirmed plan. These, however, are not factors that relate to the prejudice that National Spa may suffer if Pope's claim is allowed. An extension of time to file a late proof of claim does not vacate the confirmation order or alter the rights or responsibilities of the parties under the confirmed plan. It merely increases the size of the creditor pool. In this case, the confirmed plan provides for the full payment of all unsecured creditors. No limit was placed on the amount to be paid to any class of creditors. If a claim were allowed in an unanticipated amount, none of the other creditors would be affected. National Spa would need more money to fund the plan and to pay the claim.

The record is far from clear as to whether National Spa could satisfy another large tort judgment within the confines of the confirmed plan. At the argument on the motion, the parties did not agree on the value of the assets that have been pledged to Meneely. There might be a surplus if Meneely's judgment is sustained on appeal and paid. Without a fully developed record, the court cannot determine if there will be funds available to pay a late filed proof of claim in accordance with the terms of the plan. It is necessary to hold an evidentiary hearing to permit the record to be fully developed so that the im-

pact of the allowance of Pope's claim on the ability of National Spa to perform under its confirmed chapter 11 plan can be fairly evaluated.

### Due Process

Even if Pope's motion for an extension of time within which to file a late proof of claim is denied, he still retains his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. The framework for the Due Process Clause analysis is well established. The principal case is *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *Mullane* involved a common trust fund established under the New York Banking Law. The state law permitted a bank to aggregate various small trust accounts for investment purposes. While separate accountings and book records had to be maintained for each separate trust account, certain economies of scale were realized by permitting all of the funds to be jointly managed. The New York law provided that the trustee could apply to a state court for approval of an accounting. The approval of an accounting released the trustee from certain claims that could be made by the beneficiaries of the trusts. New York's law provided that the beneficiaries could be notified of the pendency of the judicial proceeding to approve the accounting by publication. Kenneth J. Mullane was appointed special guardian and attorney for certain persons known or unknown who did not otherwise appear at the hearing. He objected to notice by publication.

The Supreme Court held that the Due Process Clause of the Fourteenth Amendment applied. In a judicial proceeding, the Fourteenth Amendment requires that an affected party receive notice of the proceeding and an opportunity for a hearing appropriate to the nature of the case before he is deprived of life, liberty, or property. *Mullane*, 339 U.S. at 313, 70 S.Ct. at 656–57. It stated:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... The notice must be of such nature as reasonably to convey the required information, ... and it must afford a reasonable time for those interested to make their appearance, ... But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied. 'The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' (Citations omitted).

*Mullane,* 339 U.S. at 314–15, 70 S.Ct. at 657.

The Supreme Court recognized a distinction between beneficiaries whose interests or whereabouts could not be ascertained with due diligence and those who were known to the bank. With respect to known beneficiaries with a known residence, the court held that actual notice was required. *Mullane,* 339 U.S. at 318, 70 S.Ct. at 659. The court did not require personal service. It suggested that mailed notice would be sufficient under the circumstances. Publication was inadequate as to the known beneficiaries "not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hands." *Mullane,* 339 U.S. at 319, 70 S.Ct. at 660. As to unknown beneficiaries. the Supreme Court held that notice by publication was sufficient. It noted that it would be impractical to require the bank to engage in frequent investigations of the status of a large number of beneficiaries, particularly when their interests may be

"so remote as to be ephemeral." *Mullane,* 339 U.S. at 317, 70 S.Ct. at 659.

Cases since *Mullane* have reaffirmed the distinction between known and unknown parties. The Supreme Court applied the analysis in *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). This bankruptcy case sought the reorganization of a railroad under the Bankruptcy Act. The confirmation of the railroad's plan of reorganization transferred the old railroad's properties to a newly organized company free and clear of New York City's liens. New York City had not filed a proof of claim. While its liens were known to the debtor, notice of the bar date for proofs of claim was not mailed to the city or served on the city. It was published in five daily newspapers once a week for two weeks. One of the newspapers was the *Wall Street Journal.* New York City received no copy of the bar order and filed no claim. The Supreme Court held that New York City was a known creditor and was entitled to actual notice. In a later case, the Supreme Court required actual notice to a mortgagee of real property to be sold at a tax sale in *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Notice by publication was insufficient. The mortgagees were known creditors because they could be readily ascertained. *See also In re Drexel Burnham Lambert Group, Inc.,* 151 B.R. 674 (Bankr.S.D.N.Y., 1993).

*Chemetron Corp. v. Jones (In re Chemetron Corp.),* 72 F.3d 341 (3rd Cir., 1995) is analogous to the situation presented in this case. In *Chemetron,* the debtor maintained a toxic waste dump. The debtor published a notice of the filing of the petition in bankruptcy and the bar date for filing proofs of claim in the *New York Times* and the *Wall Street Journal.* The debtor's manufacturing plant was located in Cuyahoga Heights, Ohio where it utilized depleted uranium in its manufacturing process. Manufacturing ceased in

1972. A portion of the facility was demolished. A part of the rubble from the demolition was placed in a landfill in Newburgh Heights, Ohio. Four years after the bar date had passed, 15 individuals sued the debtor alleging injury from exposure to toxic chemicals at the toxic waste site. Two houses were located close to the site. The plaintiffs had rented or visited the houses. The Court of Appeals held that the plaintiffs were unknown creditors. A creditor is a known creditor, the court stated, if the creditor's identity is known to the debtor or can be reasonably ascertained by the debtor, that is, be identified through "reasonably diligent efforts." *Chemetron*, 72 F.3d at 346 (quoting *Mennonite*, 462 U.S. at 798 n. 4, 103 S.Ct. at 2711 n. 4.) "A debtor does not have a 'duty to search out each conceivable or possible creditor or urge that person or entity to make a claim against it.'" *Chemetron*, 72 F.3d at 346 (quoting *In re Charter Co.*, 125 B.R. 650, 654 (M.D.Fla., 1991)). "A vast, open ended investigation" is not required. *Chemetron*, 72 F.3d at 346. *See Mullane*, 339 U.S. at 317, 70 S.Ct. at 659 ("Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee.") The Third Circuit concluded that the plaintiffs were unknown creditors, that publication in the *New York Times* and the *Wall Street Journal* was sufficient to satisfy their due process rights, and that actual notice by service or mailing was not required.

■■■ The circumstances are substantially the same here as in *Chemetron*. Pope is an unknown creditor. The parties have stipulated that National Spa was not aware of his claim until he filed suit on May 31, 2000. There is no reasonable way that National Spa could have become aware of his claim in the exercise of ordinary diligence. The possibility that unknown claims may exist does not make potential claimants known creditors.[5] Neither actual personal service nor mailed notice of the commencement of this case or of the bar date was required to be given to Pope. However, he was entitled to notice by publication even if he would not have actually seen the published notice.

■■■ The stories in the trade journals and in the two newspapers, *Fort Worth Star–Telegram* and *Wall Street Journal*, do not constitute notice by publication. Notice by publication must be calculated to give notice. *Mennonite*, 462 U.S. at 798, 103 S.Ct. at 2711; *Mullane*, 339 U.S. at 315, 70 S.Ct. at 657; *Chemetron*, 72 F.3d at 346, 348; *Drexel*, 151 B.R. at 680. These stories were not calculated to give notice of the filing of a petition in bankruptcy or of the bar date. The stories merely stated in passing that National Spa had filed a petition in bankruptcy. Only one story identified Alexandria, Virginia as the place where the petition had been filed. None identified the court in which the case was pending or counsel for the debtor. No addresses or telephone numbers were given for a reader to obtain further information about the case. There was no mention of a bar date or any notice that

---

**5.** National Spa presented evidence that in 40 years seventeen suits had been filed against it based on its safety standards. Of these 17 suits, only one, the Meneely suit, resulted in a judgment against it. Two other pending suits were listed in the Statement of Financial Affairs. The newspaper articles presented by National Spa in this case point out the hazard of diving into swimming pools, and the injuries (including injuries like those suffered by Meneely and Pope) that result from improper diving, improperly installed diving boards, and improperly constructed pools. The standards promulgated by National Spa have clearly been placed in commerce and are among the standards that are relied upon by pool designers and builders. Given the long useful life of swimming pools, their permanent nature, and the likelihood that their physical designs will not change over time absent substantial repairs or renovations, National Spa could have concluded that there might have been unknown claims.

failure to act would result in the loss of a claim. In each instance, the bankruptcy information was buried in the story and does not come to the attention of the reader unless essentially the entire story is read. Neither the headlines nor the introductory paragraphs suggest that the stories are bankruptcy-related. The stories were written for a different purpose, and the few words dealing with the filing of the petition in bankruptcy were not calculated to give notice of the filing to unknown creditors. Passing references are not sufficient.

 Notice by publication must state more than the fact that a petition in bankruptcy has been filed. The notice must contain minimal information necessary to protect the rights of the unknown creditors. It must state where the bankruptcy is pending and the bar date. *Chemetron*, 72 F.3d at 346; *Drexel*, 151 B.R. at 680. It should give sufficient information to permit an unknown creditor to file a timely proof of claim. Had there been a proper published notice of the commencement of the case and of the bar date, Pope's due process rights would have been vindicated even if he did not receive actual notice. Because there was no adequate published notice calculated to give notice to unknown creditors of the pendency of the case and of the bar date, Pope's rights under the Due Process Clause have been infringed.[6]

It will be necessary, if an extension of time is not granted to file a late proof of claim, to determine the appropriate remedy for the violation of Pope's due process rights. If an extension of time is granted under Rule 9006 to file a late proof of claim, Pope will be paid as an unsecured creditor in accordance with the plan. If, however, the motion is denied, there is a due process violation and a different remedy—one that may affect the validity of the confirmed plan itself—will be necessary. The court will hear evidence and argument as to an appropriate remedy with regard to the due process violation if the motion to file a late proof of claim is denied. Remedies that should be addressed include whether the order confirming the plan should be vacated and whether the confirmed plan should be partially modified, by, for example, treating Meneely and Pope as members of the same class so that both benefit from the liens on a pro-rata basis.

---

**6.** The result would be different if Pope or his counsel had actual knowledge of the pendency of the case or of the bar date. Knowledge that a case has been filed places a party on inquiry notice to determine the existence of a bar date. *Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir., 1983); *In re Larsen*, 80 B.R. 784, 787 (Bankr.E.D.Va., 1987). *But see City of New York*, 344 U.S. at 297, 73 S.Ct. at 302. (*City of New York* is a Bankruptcy Act case where the creditor, New York City, knew of the pendency of the bankruptcy case but did not receive mailed notice of the bar date. "[E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred.") Pope did not have actual knowledge of the pendency of the case.