**In re DREXEL BURNHAM LAMBERT GROUP INC., et al., Debtor.**

**Bankruptcy No. 90 B 10421.**

United States Bankruptcy Court,
S.D. New York.

Feb. 19, 1993.

See also 151 B.R. 674.

P. Gruenberger, A. Miller, V. Broderick, and H. Spierer, Weil, Gotshal & Manges, New York City, for DBL Liquidating Trust (Trust), as successor in interest to Drexel Burnham Lambert Group Inc. (DBL Group) and its affiliated companies (collectively, Drexel or Debtors).

R. Hronsky, Robert Abrams, Atty. Gen., State of NY, New York City, for Comptroller of State of NY (Comptroller).

MEMORANDUM OF DECISION ON OBJECTION TO CLAIM UNDER THE NEW YORK ABANDONED PROPERTY LAW

FRANCIS G. CONRAD, Bankruptcy Judge:*

* Sitting by Special Designation.

The issues presented[1] include whether Comptroller's right to pre-petition and post-petition abandoned property under the New York Abandoned Property Law (NYAPL) is pre-empted by the Federal Bankruptcy Laws; and whether Comptroller filed a timely and valid customer property proof of claim.

We hold that Comptroller's right to property deemed abandoned post-petition under the NYAPL is disallowed because it does not constitute a valid pre-petition claim. Nor may Comptroller file a proof of claim for the benefit of former customers of Drexel Burnham Lambert Incorporated Inc. (DBL Inc.), with respect to the property deemed abandoned post-petition because the filing of such a claim would conflict with the distribution scheme of the federal bankruptcy laws.

Further, we hold that Comptroller has a valid pre-petition claim with respect to property deemed abandoned pre-petition and required to be delivered to Comptroller pre-petition under the NYAPL. We also hold that the portion of Comptroller's August 21, 1992 proof of claim relating to securities and dividends of New York State residents, which property was deemed abandoned in 1989 and subject to delivery to Comptroller in March, 1990, is a timely filed customer claim.

## FACTS

On February 13, 1990, DBL Group filed a bankruptcy petition. DBL Inc., a subsidiary of DBL Group, filed a bankruptcy petition on May 29, 1990.

On the date of DBL Inc.'s filing, the bankruptcy court issued an order requiring DBL Inc. to maintain several segregated accounts and to segregate five categories of securities on its books (the "Segregation Order").

Paragraph 7 of the Segregation Order authorized DBL Inc. to use these funds and securities, "on an on-going basis, to satisfy valid claims by former customers of DBL Inc. and other broker-dealers or banks acting as brokers or dealers to 'customer property' … or 'customer name securities.'" The segregated property consisted of securities, dividends, interest payments and uncashed checks relating to the proceeds of same, which should have been credited to customer accounts.

This court set August 24, 1992 as the last date for creditors to file customer property claims against DBL Inc. All other claims were governed by the November 15, 1990 bar date (Bar Date).

On November 13, 1990, Comptroller filed a proof of claim on a customer claim form for $2,979.05 for a credit balance held by DBL Inc. in Comptroller's name.

On August 21, 1992, Comptroller filed a claim for an estimated amount of $10.5 million. Although the claim was not on a customer claim form, Comptroller indicated on the form that this claim was an amendment to its earlier filed claim. The basis of Comptroller's claim is that New York State is entitled to property belonging to its residents that became abandoned under the NYAPL, both pre-petition and post-petition. Comptroller asserts that because Debtors failed to file abandoned property reports as required by the NYAPL, the estimated amount is based on amounts paid by DBL Inc. in prior years. The proof of claim indicated that the abandoned property "may have included unclaimed vendors checks payable to residents of New York, uncashed vendors checks issued by the debtors to vendors for goods and or services not tendered to the debtors when the vendors are resident(s) of the state, both securities belonging to residents of the state and dividends payable to residents of

---

**1.** Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the Order, dated February 19, 1991 (Pollack, S.D.J.), which withdrew the reference to this Court under 28 U.S.C. § 157(d) and 11 U.S.C. § 105(a), and simultaneously re-referred to us jurisdiction over all core and non-core related matters. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A) and (B). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

the state and wages payable to residents of the state which have remained unclaimed for a period of three years."

Trust objects to the proofs of claim filed by Comptroller. Trust maintains that the proof of claim filed on August 21, 1992 is not a valid amendment to the earlier filed claim and, is barred because it was filed after the Bar Date. Further, Trust maintains that Comptroller's proof of claim, filed on August 21, 1992, is not a customer property claim, under § 741, subject to the special bar date set for those claims. Trust maintains that to qualify as a customer property claim, the claim must reflect a right to payment because of a transaction involving the claimant and Debtors. Trust contends that a "customer" is afforded protection in its capacity as investor or trader and inasmuch as Comptroller is not an investor or trader with respect to the claims it asserts under the NYAPL, the claim is not a customer property claim. Thus, Trust maintains that the claim was not timely filed because it is an unsecured non-customer claim filed after the Bar Date.

Further, Trust asserts that even if the claim is deemed timely filed, the NYAPL claim conflicts with, and is preempted by, Federal Bankruptcy Law.

Comptroller puts forth that because its claim was filed with respect to those funds and securities held for DBL Inc.'s former customers, which funds and securities constitute "customer name securities" or "customer property" under § 741, the claim is properly classified as a customer property claim and is filed timely.

Further, Comptroller maintains that the NYAPL does not conflict with Federal Bankruptcy Law.

## DISCUSSION

■ Article V–A of the NYAPL relates to unclaimed property held by brokers. Under NYAPL § 511(1), property or securities held by a brokerage firm for the account of a person that remains unclaimed for three years is considered abandoned. NYAPL § 512(1) requires that in March of each year, the brokerage firm deliver to Comptroller any property that was deemed abandoned on the preceding thirty-first day of December. The delivery of the property is to be accompanied by a report setting forth information about the abandoned property. NYAPL § 513. Money and proceeds of property turned over to Comptroller are placed in a special "abandoned property fund." New York State Finance Law (NYSFL) § 95(1). The state holds this unclaimed property as a custodian until the property is claimed by the owner. *In re Thomson McKinnon Securities, Inc.,* 125 B.R. 88, 92 (Bkrtcy.S.D.N.Y.1991). The NYAPL sets no time limits for the filing of an owner's claim. NYAPL § 1406. When the amount in the special abandoned property fund exceeds $750,000, the excess is placed "into the state treasury to the credit of the general fund." NYSFL § 95(3). This is done to fulfill the state's policy regarding this unclaimed property so that "while protecting the interest of the owners thereof, [the state] may utilize ... unclaimed property for the benefit of all the people of the state." NYAPL § 102.

Comptroller has filed a proof of claim asserting as its basis, the amounts held by DBL Inc. that are payable to Comptroller for the years 1990, 1991, and 1992 under the NYAPL.

According to 11 U.S.C. § 101(5)(A), a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

■ If a proof of claim is filed under § 501, the claim is allowed unless objected to by a party in interest. 11 U.S.C. § 502(a). Once an objection is filed, a court must determine the amount of the claim "as of the date of the filing of the petition" and then allow or disallow the claim. 11 U.S.C. § 502(b).

■ With respect to the property that was deemed abandoned in December, 1989, DBL Inc. was required to deliver the property to Comptroller in March, 1990. NYAPL § 512(1). Comptroller had the right to delivery of this property prior to the filing of DBL Inc.'s petition. Thus, "as

of the date of the filing of [DBL Inc.'s] petition," the amount of the Comptroller's claim was an amount equal to the amount of property belonging to New York residents, which was held by DBL Inc. and that was deemed abandoned in December 1989, and would have been delivered to the Comptroller in March, 1990. All of these events should have occurred prior to DBL Inc.'s filing of its bankruptcy petition. Comptroller had a valid claim, in its own name, to this property prior to DBL Inc.'s filing and, assuming a timely filed proof of claim, it is entitled to participate in any distribution to the class it is assigned to under the confirmed plan of reorganization.

■ With respect to the property that was deemed abandoned in 1990 or 1991, and required to be delivered to Comptroller in March 1991 and March 1992, respectively, inasmuch as Comptroller's right to the property occurred after the filing of DBL Inc.'s petition, Comptroller would not have a claim "as of the filing of the petition." Thus, to the extent that Comptroller's proof of claim relates to property to which Comptroller asserts a right post-petition, it is disallowed. (Cf. *State of Arkansas, et al. v. Federated Department Stores, Inc. (In re Federated Department Stores, Inc.)*, No. C–1–92–195, S.D.Ohio 1992 (Graham, D.J.), where the court, relying on the definitions of creditor in 11 U.S.C. § 101(10)(A) and of claim in 11 U.S.C. § 101(5), allowed various State Comptrollers' pre-petition claims and disallowed their post-petition claims.)

In support of its position that Comptroller's NYAPL claim conflicts with the bankruptcy laws, Trust cites *In re Thomson McKinnon Securities, Inc., supra*, 125 B.R. 88. In *McKinnon*, the court found that Comptroller's claim for abandoned property under the NYAPL was in conflict with the distribution scheme established by bankruptcy law because it would allow a debtor's former customers and creditors, whose claims were terminated by their failure to file proofs of claim prior to the bar

date, to satisfy these claims and diminish the funds available to creditors who timely filed proofs of claim. *Id.* at 93–94.

We agree with the *McKinnon* court's analysis with respect to the instant Comptroller's claims based on its right to delivery of abandoned property that arose postpetition, where the court found that a debtor's former customers or creditors who failed to file timely proofs of claim would find "their rights to property of the estate were terminated under the bankruptcy laws." *Id.* at 94. With respect to Comptroller's claim relating to its right to abandoned property that arose pre-petition, however, we find that Comptroller is a creditor in its own name and, assuming it filed a timely proof of claim, it is entitled to participate in the distribution.

■ We recognize that DBL Inc.'s former customers and creditors, whose property was deemed abandoned in 1989 and are subject to delivery to Comptroller in March, 1990, are now able to satisfy their claims despite their failure to file timely proofs of claim;[2] however, the right to custody of this property devolved upon the state prior to the filing of DBL Inc.'s petition. The position of these former customers and creditors is similar to that of former customers and creditors whose property was deemed abandoned in 1988 or prior years where the state has already taken custody of the property and these customers may now satisfy their claims by turning to the state. But for the failure of DBL Inc. to comply with the requirement of the NYAPL prior to its filing of the bankruptcy petition, Comptroller would have had custody of the property prior to DBL Inc.'s filing.

On the other hand, where the right to the property had not yet devolved on the state prior to the filing of DBL Inc.'s bankruptcy petition, former customers would find their rights to property of the estate affected by the filing of DBL Inc.'s petition and these customer's rights would be terminated if they failed to file a timely proof of claim.

**2.** We add that if a customer is successful in claiming from New York State, it may not "double dip" into Debtors' estate. The converse is true for customers who have been paid from the bankruptcy estate.

■ Trust contends that the NYAPL conflicts with, and is preempted by, 11 U.S.C. § 347(b).[3] This section, however, concerns property of the estate "remaining unclaimed" by the failure of a party to perform an act as a condition to participation in the distribution. We established that Comptroller has a pre-petition claim in its own name, under the NYAPL, for the property deemed abandoned and required to be delivered to it prior to the filing of DBL Inc.'s bankruptcy petition. If Comptroller filed a timely proof of claim, and if it complies with any other requirements established in the plan for receipt of the property, the property does not remain "unclaimed" and § 347(b) is not implicated.

■ With respect to the property that was abandoned post-petition, Comptroller insists that it is authorized to file a proof of claim for this property as custodian on behalf of the former customer's of DBL Inc. Comptroller contends that if DBL Inc. had not filed for bankruptcy, it would have continued to deliver New York State residents' abandoned property to the state in its regular course of business. Further, Comptroller asserts that by failing to comply with the reporting and delivery requirements of the NYAPL since March, 1990, DBL Inc. has failed to comply with 28 U.S.C. § 959(b), which requires a debtor-in-possession to "manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which the property is situated."

Although Comptroller had a right to file a proof of claim in its own name for New York residents' property that was deemed abandoned in 1989 and subject to the reporting and delivery requirements of the NYAPL in March, 1990, it does not have such a pre-petition claim in its own name for New York residents' property where

the three-year dormancy period had not elapsed pre-petition.

With reference to the property deemed abandoned post-petition where Comptroller may not file his own claim, no section of the Code specifically authorizes the filing of a proof of claim by Comptroller on behalf of DBL Inc.'s former creditors and customers.

Comptroller argues that his position is similar to that of an indenture trustee who is permitted to file for creditors who are beneficiaries of its trust. The Bankruptcy Code, however, specifically provides for the filing of a proof of claim by an indenture trustee on behalf of the beneficiaries of its trust. 11 U.S.C. § 501(a). No comparable section allows for the type of claim that Comptroller seeks to file. Nor would Comptroller's filing of a claim for the benefit of DBL Inc.'s former customers and creditors fall within any of the other sections of the Code that permits the filing of a claim by one entity for another.[4]

Comptroller cites to *In re Berry Estates Inc.*, 812 F.2d 67 (2d Cir.1987), to support its position that it should be allowed to file a claim for the benefit of DBL Inc.'s former customers. The *Berry* court allowed Comptroller to file a claim for unclaimed funds owed to New York residents tenants by the debtor, their former landlord, who had violated rent control laws by collecting excess rents. The landlord had disregarded orders issued by a New York State court directing the landlord to escrow the money that had remained unclaimed by former tenants. The landlord was required to deposit the unclaimed money with the County Court Clerk for later distribution to the former tenants when they were located. Although Comptroller was not a creditor, it was allowed to file the claim "to enforce obedience to court orders requiring the de-

---

3. 11 U.S.C. § 347(b) provides:
 Any security, money, or other property remaining unclaimed at the expiration of the time allowed in a case under chapter 9, 11, or 12 of this title for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any plan confirmed under section 943(b), 1129, 1173, or 1225 of this title, as the case may be, becomes the property of the debtor or of the entity ac-

quiring the assets of the debtor under the plan, as the case may be.

4. The Bankruptcy Code permits the filing of a creditor's claim by "an entity that is liable to such creditor with the debtor, or that has secured such creditor." 11 U.S.C. § 501(b). The debtor or trustee may file a claimant's proof of claim. 11 U.S.C. § 502(c).

posit of money with the court or its clerk." *Id.* at 71. Comptroller urges that its effort to enforce the NYAPL is similar to Controller's effort in *Berry* to enforce the escrow order because in both instances, Comptroller sought to enforce a state law by filing a bankruptcy claim.

The *Berry* case, however, was unique inasmuch as all the potential claims involved the former tenants. The *Berry* court noted that no other creditors would be harmed if Comptroller's claim were allowed. Inasmuch as there were no other creditors, if Comptroller's claim were disallowed, the unclaimed funds would revert to the debtor landlord. The focus of the court's concern in *Berry* was preventing the landlord debtor from profiting from his misconduct. *Id.*

The case before us is clearly distinguishable from *Berry* because Drexel has many creditors. Allowing Comptroller's claim would impact adversely on innocent creditors. Indeed, Drexel creditors are not receiving full payment on their claims. If we allow Comptroller to claim for the benefit of former customers who may never come forward with a claim, we further diminish the distribution to creditors in favor of noncreditors. Moreover, by virtue of the abundance of claims and amounts owed to creditors, Debtors will not be the recipients of any of the funds if we disallow Comptroller's claim. Thus, the apprehension that a wrongdoer debtor would retain the funds, which influenced the Second Circuit's decision in *Berry*, is not a factor in the Drexel bankruptcy. We find *Berry* inapplicable to the facts of the case before us.

We hold that Comptroller may not file a proof of claim for the benefit of DBL Inc.'s former customers and creditors where the three-year dormancy period has not elapsed

pre-petition because, with respect to property in which a debtor has an interest pre-petition, the distribution scheme of the Federal Bankruptcy Laws pre-empts the further application of the State NYAPL, after the filing of the bankruptcy petition.[5]

■ The Supremacy Clause[6] of Art. VI of the Constitution provides Congress with the power to pre-empt state law. *Louisiana Public Service Comm'n v. FCC*, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). In the Bankruptcy Code, "Congress has legislated comprehensively, thus occupying an entire filed of regulation and leaving no room for States to supplement federal law." *Id.*

A recent New York Court of Appeals decision recognized the constitutionality of a federal statute that nullified New York's statutory right of escheat under the NYAPL with respect to unclaimed income tax refunds of New York State residents. *Abrams v. Brady*, 77 N.Y.2d 741, 570 N.Y.S.2d 468, 573 N.E.2d 556 (1991). The New York Court of Appeals asserted that "it is well established that the [Federal] Government can override the States' escheat rights through affirmative legislation and that the Tenth Amendment, which reserves certain spheres of power to the States (U.S. Const. 10th Amend.), does not operate as an impediment to Congress's authority in this area." *Abrams v. Brady*, *supra*, 77 N.Y.2d at 747, 570 N.Y.S.2d at 471, 573 N.E.2d at 559.

On the date of the filing of the bankruptcy petition, with respect to the property deemed abandoned post-petition, Comptroller did not have a claim in its own name to the former customer accounts and securities segregated by court order. Under Bankruptcy Rule 3003(c)(3), this court es-

---

5. Inasmuch as we find that the claims Comptroller seeks to file for the benefit of customers whose property would be deemed abandoned post-petition are pre-empted by the federal bankruptcy laws, we do not reach the issue of whether, under different circumstances, a claim filed by an entity for the benefit of another would be permissible.

6. The Supremacy Clause, Art. VI, Clause 2 provides:

This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding.

tablished a date by which creditors or equity security holders were to file their proofs of claim. A separate bar date was established for customer claims. Creditors who did not file timely proofs of claim by the respective bar dates have not been treated as creditors on their claims for the purpose of voting on or distribution under the plan of reorganization. F.R.Bkrtcy.P. 3003(c)(2). By failing to file timely proofs of claim, the former customers and creditors found their right to claim property barred, "with the result that more property became available for distribution to those creditors of the debtor who did file timely proofs of claim." *McKinnon, supra,* 125 B.R. at 92. The claims procedure "reflects a uniform federal policy with respect to [the treatment of claims] in Chapter 11 cases." *McKinnon, supra,* 125 B.R. at 92.

■■■ Where the three-year dormancy period for abandonment lapses post-petition, a claim filed by Comptroller with respect to this property would not be based on a right in Comptroller's own name that devolved upon it pre-petition. Rather, Comptroller's claim is derived from "the possible claims of the debtor's former customers and creditors whose claims were terminated by the [special bar date set for customer claims] fixed under the bankruptcy laws." *McKinnon, supra,* 125 B.R. at 93. If these former customers are permitted to satisfy their claims under the NYAPL by allowing Comptroller to file a claim for them, it would conflict with procedures for establishing bar dates. The bar date terminates the rights of parties who do not file by that date. *Id.* Allowing the claim to be filed by Comptroller for the former customers would impact adversely on the customers who timely filed claims because the funds in the estate available for distribution to them would be diminished. *McKinnon, supra,* 125 B.R. at 94.

In the *Abrams v. Brady, supra,* 77 N.Y.2d at 747–748, 570 N.Y.S.2d at 472, 573 N.E.2d at 560, decision where it was found

that federal law preempted New York State's right, under Article XII–A of the NYAPL, to escheat its residents' income tax refunds, the New York Court of Appeals recognized the importance of an "administrative framework" to accomplish "the end[s] to be served" by the Federal Government's income tax system. The *Abrams v. Brady* court found that even if the Federal Government has no revenue based interest in the collected tax funds that represent overpayments to be refunded to individual taxpayers, the power to lay and collect taxes included "the power to establish an administrative framework for the collection of taxes." *Id.,* 77 N.Y.2d at 747, 570 N.Y.S.2d at 472, 573 N.E.2d at 560. In the same manner, the Bankruptcy Law provides an "administrative framework" to achieve the goals of bankruptcy. One of the goals of bankruptcy is to treat creditors fairly and equitably. Applying the reasoning and the language used in *Abrams v. Brady, supra,* 77 N.Y.2d at 748–749, 570 N.Y.S.2d at 472, 573 N.E.2d at 560, the Bankruptcy Rule setting the bar date is part of the "framework" to foster "the fair administration of a national system" of distribution of assets of a debtor.

The bar date is the mechanism by which the rights of creditors are terminated. Where Comptroller does not have a claim in its own name, allowing it to file a claim for the benefit of these creditors is the equivalent of a state imposed extension of the bar date. The allowance of that claim would contravene the Federal Bankruptcy Laws by authorizing "the satisfaction of claims for the benefit of creditors whose rights to property of the estate [would otherwise be] terminated under the bankruptcy laws." *McKinnon, supra,* 125 B.R. at 94.

■■■ Further, we find that where Comptroller is filing a claim, not in its own right, but for the benefit of the former customers, allowing the claim would conflict with 11 U.S.C. § 1123(a)(4).[7]

---

7. According to 11 U.S.C. § 1123(a)(4), pertaining to the contents of a plan,

(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—

．　．　．　．　．

(4) provide the same treatment for each claim or interest of a particular class, unless

The court in *Federated supra,* Slip. Op. at 16, found "that the States' abandoned property laws do not conflict with § 1123(a)(4)" because § 1123(a)(4) only imposed an obligation on the debtor's to treat the states, who were creditors, the same as other creditors in the same class. *Id.* at p. 16. The *Federated* court further found that § 1123(a)(4) placed no "limitations on creditors as to how funds may be distributed after the creditors receive them." *Id.* We agree with this analysis as it applies to a timely filed claim by Comptroller, in its own name, where it is the creditor. With reference, however, to the claim that Comptroller seeks to file for the benefit of the former customers of DBL Inc., where the property was abandoned post-petition, Comptroller does not have a claim in its own name and, thus, Comptroller is not the implicated creditor. Allowing Comptroller to file the claim for the former customers, the true creditors, would conflict with § 1123(a)(4) because each state has its own method of distributing the funds and Debtors' similarly situated creditors would receive different treatment.

 Finally, with reference to these claims that are not Comptroller's pre-petition claims filed in its own right, but rather claims for the benefit of former customers, allowing Comptroller to file these claims conflicts with the policy of the Bankruptcy Code in another respect. If Comptroller acquires the funds, the NYAPL provides for funds held by the State to be used "for the benefit of all the people of the state," NYAPL § 102, under the state's *parens patriae* doctrine. Thus, while the state is custodian of the funds, it may use these funds for the benefit of non-creditor citizens of New York until the former customer comes forward and files a claim with the state. This conflicts with the federal bankruptcy policy of maximizing distributions to a debtor's creditors. Indeed, if these former customers have not come forward to date, notwithstanding all of the publicity incident to the Drexel bankruptcy and the notices published by Drexel advising creditors to file claims, it is unlikely that these former customers will respond to notices to file claims published by the State of New York. Thus, if the state acquires these funds, it is highly probable that the funds will never be distributed to creditors. Allowing Comptroller to acquire the funds where Comptroller is not a creditor and to use the funds for the benefit of non-creditors "stands as an obstacle to the accomplishment and execution of the full objectives of Congress," thus, the state law is pre-empted by federal law. *Louisiana, supra,* 476 U.S. at 368–369, 106 S.Ct. at 1898.

We find that the NYAPL is pre-empted by the Federal Bankruptcy Laws with respect to property of New York State residents that DBL Inc. had an interest in prepetition, but was deemed abandoned under the NYAPL post-petition. Insofar as the NYAPL is pre-empted, it is not a valid state law requiring compliance by a debtor-in-possession under 28 U.S.C. § 959(b).

That portion of Comptroller's claim seeking segregated funds associated with property which was not abandoned pre-petition will be disallowed.

With reference to Comptroller's pre-petition claim, the claim will be allowed and it may participate in the distribution if it filed a timely proof of claim. It is to that issue that we now turn.

Comptroller maintains that the August 21, 1992 proof of claim was timely filed because it was a customer claim that was filed prior to the special bar date set for customer claims. Comptroller also indicates on this proof of claim that it was an amendment to its earlier proof of claim filed prior to the Bar Date.

Trust maintains that Comptroller's proof of claim was not a timely filed customer claim because Comptroller does not qualify as a customer as that term is defined in § 741(2) of the Bankruptcy Code. Further, Trust maintains that the August 21, 1992 proof of claim is not a proper amendment to the proof of claim filed prior to the Bar

the holder of a particular claim or interest agrees to a less favorable treatment of such

particular claim or interest....

Date because it does not reasonably relate back to that proof of claim.

■■■ The decision whether to allow the amendment of a proof of claim is discretionary. *In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir.1992). Inasmuch as the bar date serves the purpose of promptly informing the debtor and creditors of the claims being made in the bankruptcy, and of their amounts, *id.* at 1205, amendments made after the bar date are carefully "scrutinized" to ascertain whether they are genuine amendments rather than "entirely new claim[s]" *W.T. Grant Company*, 53 B.R. 417, 422 (Bkrtcy.S.D.N.Y.1985).

■■ Amendments are permitted where their purpose is to correct a defect in an earlier filed claim, to more fully describe the claim, or to put forth a new theory of recovery for the facts in the original claim. *Id.* at 417.

■■ The amendment may not be used as a mechanism for circumventing the bar date. "If [a creditor] had an unqualified right after the bar date to amend proofs of claim dramatically for any reason[,] ... the bar date in bankruptcy proceedings would be meaningless." *Stavriotis*, 977 F.2d at 1206.

In *Stavriotis*, the Seventh Circuit refused to allow the IRS to amend its proof of claim subsequent to the bar date. The IRS sought to increase the debtor's 1981 and 1984 tax liability from $11,132.29 to $2,435,078.39 and to add tax liability for 1982. The court easily disposed of the portion of the amendment which sought to add liability for the tax year 1982 because it found that separate tax years mean separate tax claims. Thus, the claim for 1982 taxes was a separate transaction and did not relate back to the original claim for 1981 and 1984 taxes. *Id.* at 1206 n. 4.

With respect to the increase in tax liability for 1981 and 1984, the court noted that the "dramatic increase in the claim amount ... came as an unfair surprise to other creditors." *Id.* at 1205. The court indicated that while the increase in the amount of the claim alone might not be sufficient to deny the amendment, when considered with other factors including the prejudice to other creditors and the absence of justification for the delay in informing the court and creditors of the amendment, a court would have a valid basis for denying the amendment. *Id.*

In the case before us, the claim filed by Comptroller on November 13, 1990, prior to the Bar Date, related to a credit balance due and owing in the amount of $2,979.05 to the Office of Unclaimed funds. The purported amendment filed by Comptroller on August 21, 1992 related to its claim for abandoned property owed to Comptroller under the NYAPL for 1990, 1991, and 1992. The claim was estimated at $10.5 million dollars.

Comptroller has indicated that the amount due to it for these years was estimated because Drexel has not filed the required reports that would specify the amount owed. The estimation is based on amounts paid historically by DBL Inc. to Comptroller, prior to its bankruptcy filing. The estimate in the proof of claim is the sum of $3,500,000 for each of the three years for which Comptroller seeks abandoned property. In their earlier proof of claim relating to account balances due as of May 25, 1990, the amount of the claim is specified as $2,979.85, and attached to it is a copy of the account statement issued by DBL Inc. to the Bureau of Abandoned Property that describes the securities held, the transactions involving the securities, and the credit balances due Comptroller.

■■ Although we have already disallowed the portion of Comptroller's August 21, 1992 proof of claim that pertains to abandoned property due to be delivered in 1991 and 1992, we note that this portion of the claim clearly does not relate back to the claim filed on November 13, 1990. The earlier filed claim concerns securities transactions occurring prior to May 25, 1990. Following the analysis in *Stavriotis*, the portion of the amended proof of claim pertaining to the required delivery of property in later years does not relate back to the earlier proof of claim. Thus, this portion of the amendment would also be disallowed on this basis.

■ Although the claim for property deemed abandoned in 1989 that was due to be reported and delivered to Comptroller in March, 1990 might arguably relate back to the May, 1990 account statement, we find that because of the dramatic increase in the amount of the claim from $2,979.05 to $3,500,000, coupled with the lack of justification for the delay in filing the claim for the abandoned property, it is not a valid amendment.

The delay in filing the claim was not warranted because, as Comptroller indicated in its own papers, the estimate of the claim in the purported amendment was based on the payments made by DBL Inc. to Comptroller from 1986 to January, 1990. These figures were available to Comptroller when it filed its earlier proof of claim and it could have easily filed a protective claim based on these same figures. Compare, *In re Drexel Burnham Lambert Group, Inc.*, Memorandum of Decision on Application to File Late Proof of Claim, 151 B.R. 674, 683 (S.D.N.Y.1993) (Conrad, J.), where we discuss the doctrine of laches.

■ Having determined that the August 21, 1992 proof of claim was not a valid amendment to the November 13, 1990 proof of claim, we must now determine whether the August 21, 1992 proof of claim was a timely filed customer property claim.

In Comptroller's proof of claim, the only property sought that may be classified as "customer property", as that term is defined in 11 U.S.C. § 741(4),[8] is the securities and dividends. Thus, that portion of the proof of claim seeking abandoned property consisting of unclaimed or uncashed vendors checks and unclaimed wages payable to residents of New York is disallowed.

The definition of customer in 11 U.S.C. § 741(2)[9] is similar to that in the Securities Investor Protection Act (SIPA) § 78*lll*(2). The SIPA definition was taken from § 60(e)(1) of the Bankruptcy Act. Trust notes that courts have limited the protections afforded customers in SIPA to persons who maintain securities accounts with brokers and trade or invest through these brokers. Trust cites *SEC v. F.O. Baroff Co.*, 497 F.2d 280 (2d Cir.1974) to support its position that the protection for customers is for those who trade or invest and not those who become creditors of the broker for independent reasons. *Baroff, supra,* 497 F.2d at 283. Trust asserts that Comptroller did not maintain an account as an investor or trader, or entrust securities to Debtors with respect to the property that is the subject of the August 21, 1992 proof of claim. Therefore, Trust contends that Comptroller is not included within the SIPA and, analogously, the Code definition of customer.

■ In describing the application of SIPA protections to a customer, the *Baroff* court noted that in interpreting the Bankruptcy Act definition of customer, courts have "stressed protection to, and equality of treatment of, the public customer who has entrusted securities to a broker for some purpose connected with participation in the securities markets." *Baroff, supra,* 497 F.2d at 283. The "trading customer"

---

8. 11 U.S.C. § 741(4) provides in relevant part that:

"customer property" means cash, security, or other property, and proceeds of such cash, security, or property, received, acquired, or held by or for the account of the debtor, from or for the securities account of a customer ...

9. 11 U.S.C. § 741(2) provides:

(2) "customer" includes—
(A) entity with whom a person deals as principal or agent and that has a claim against such person on account of a security received, acquired, or held by such person in the ordinary course of such person's business as a stockbroker, from or for the securities account or accounts of such entity—

(i) for safekeeping;
(ii) with a view to sale;
(iii) to cover a consummated sale;
(iv) pursuant to a purchase;
(v) as collateral under a security agreement; or
(vi) for the purpose of effecting registration of transfer; and
(B) entity that has a claim against a person arising out of—
(i) a sale or conversion of a security received, acquired, or held as specified in subparagraph (A) of this paragraph; or
(ii) a deposit of cash, a security, or other property with such person for the purpose of purchasing or selling a security.

was the one meant to be protected. *Id.* We need not reach the issue of whether the Code definition of customer is limited in the same manner because, even applying the limited definition of customer as interpreted by courts considering SIPA or the Bankruptcy Act, we find that Comptroller qualifies as a customer for its pre-petition claim.[10]

Trust's argument that Comptroller does not qualify as a customer because it did not maintain an account or entrust securities with DBL Inc., with respect to this property, simply ignores the fact that the property abandoned in 1989 should have been delivered to Comptroller in March of 1990, prior to DBL Inc.'s filing of a bankruptcy petition. DBL Inc.'s compliance with the delivery and reporting requirements of the NYAPL would have meant that Comptroller became the owner of record on DBL Inc.'s books in March 1990, with subsequent account statements concerning that property sent to Comptroller. Comptroller could have directed DBL Inc.'s activity concerning the securities. Comptroller's right to delivery of these securities and dividends vested in March 1990. Since that date, DBL Inc. has the same fiduciary relationship with Comptroller as with any other customer who had entrusted stock to DBL Inc. DBL Inc.'s failure to deliver the securities to Comptroller, as required by the NYAPL, resulted in an involuntary entrustment of the securities by Comptroller to DBL Inc. Thus, we find that Comptroller has a valid timely filed proof of claim with respect to both securities belonging to, and dividends payable to, residents of New York State that were deemed abandoned in 1989 and subject to delivery to Comptroller in March 1990.

### CONCLUSION

Comptroller has a valid pre-petition claim in its own right for securities and dividends deemed abandoned and subject to delivery to Comptroller, under the NYAPL, pre-petition. The portion of Comptroller's August 21, 1992 proof of claim relating to securities and dividends deemed abandoned in 1989 and subject to delivery to Comptroller in March, 1990 is allowed. Debtors are directed to provide Comptroller with the report required by the NYAPL, setting forth the amount of securities and dividends abandoned in 1989.

Comptroller's proof of claim filed on November 13, 1990, relating to a credit balance due and owing Comptroller by DBL Inc. in the amount of $2,979.05 is allowed.

The portion of Comptroller's August 21, 1992 proof of claim relating to post-petition abandoned property is disallowed.

The portion of Comptroller's August 21, 1992 proof of claim relating to pre-petition or post-petition abandoned vendor checks or wages is disallowed.

Counsel for Trust is to settle the order.

**10.** Inasmuch as we have already disallowed the claim for property that was subject to delivery to Comptroller in 1991 and 1992, we do not reach the issue of whether Comptroller would qualify as a § 741(2) customer with respect to that property.